## In Re THOMPSON.

### In Banc, June 19, 1893.

Constitution : VAGRANCY: INVOLUNTARY SERVITUDE.　Revised Statutes of 1889, section 8849, authorizing a vagrant not accused or convicted of any crime to be hired for six months to the highest bidder after the determination of the fact of such vagrancy by a jury before a justice of the peace, is violative of both the state and federal constitutions prohibiting slavery or involuntary servitude, except in punishment of crime whereof the party shall have been duly convicted.

| | |
|---|---|
| 117 | 83 |
| 135 | 229 |
| 117 | 83 |
| 139 | 91 |
| 117 | 83 |
| 160 | 246 |
| 160 | 268 |
| 160 | 270 |
| 160 | 271 |

In re Thompson.

*Habeas Corpus.*

PETITIONER DISCHARGED.

The petitioner, a negro, charged with being a vagrant, was arrested and brought before J. J. Winscott, a justice of the peace of Salt River township, Audrain county, Missouri. The evidence adduced before the jury summoned for the occasion, supported the charge, and consequently a verdict was returned in accordance with the evidence. Thereupon, the justice, complying with the provisions of section 8849 in relation to vagrants, issued this warrant to J. T. Bunton, constable of that township, commanding him after three days' public notice to hire out petitioner, at the court house door for six months to the highest bidder for cash in hand.

Pending the execution of the warrant for hiring, petitioner applied to this court for the writ, the issuance of which brought the matter of the validity of his detention before this court.

The provisions of chapter 169, 2 Revised Statutes, 1889, under which the proceedings aforesaid were had, so far as necessary to quote them, are as follows:

"Sec. 8846. Every able-bodied person who shall be found loitering about without visible means of support and maintenance, and who does not apply himself to labor, or some other honest calling to procure a livelihood, and all able-bodied persons who are found begging, or who quit their houses and leave their wives and children without the means of subsistence, shall be deemed and treated as vagrants."

"Sec. 8848. When any such person is found, any justice of the peace of the county shall, upon information, or from his knowledge, issue his warrant to the sheriff or constable to bring such person before him.

"Sec. 8849. If upon examination it shall appear that such person is a vagrant, the fact of vagrancy having been established by the verdict of a jury, summoned and sworn to inquire whether the person be a vagrant or not, the justice shall make out a warrant directing the sheriff or constable to keep such person in his custody until three days' notice can be given by advertisement, set up in the most public places in the county, of the hiring out of such vagrant, at the court house door in said county, for the term of six months, to the highest bidder, for cash in hand."

Another statutory provision respecting vagrants to be found under the title of crimes and punishments, is the following:

"Sec. 3841. Every person who may be found loitering around houses of ill-fame, gambling houses, or places were liquors are sold or drank, without any visible means of support, or shall attend or operate any gambling device or apparatus, or be engaged in practicing any trick or device to procure money or other thing of value, or shall be engaged in any unlawful calling whatever, and every able-bodied married man who shall neglect or refuse to provide for the support of his family, and every person found tramping or wandering around from place to place without any visible means of support, shall be deemed a vagrant, and, upon conviction thereof, shall be punished by imprisonment in the county jail not less than twenty days, or by fine not less than twenty dollars, or by both such fine and imprisonment.

*F. W. Lehmann, E. S. Gantt, George S. Grover* and *George Robertson* for petitioner.

(1) The law in question is invalid because in violation of the constitutional provisions: (*a*) Against

In re Thompson.

imprisonment for debt. (*b*) That of the state and of the United States prohibiting slavery or involuntary servitude except as a punishment for crime. (*c*) Conferring upon the governor the power to pardon in all cases except treason and impeachable offenses. (*d*) Prohibiting cruel and unusual punishment. *Caughlin v. Ehlert*, 39 Mo. 285; *Ex parte Crenshaw*, 80 Mo. 447; *Clark's case,*, 1 Blackf. 122; *Turner's case*, 1 Abb. U. S. 84; *Slaughterhouse cases*, 16 Wall. 69; *Civil Rights cases*, 109 U. S. 3; Cooley's Constitutional Limitations; 1 Blackstone's Commentaries, p. 423; *Case of Somersett*, 20 State Trials, 3; *In re Bayard*, 25 Hun. 546; Ordruonaux Constitutional Legislation, 266.; Cooley's Constitutional Limitations, 402. (2) The alleged chapter has been repealed by necessary implication in consequence of the enactment of other laws inconsistent therewith and comprehensive of its entire subject-matter. Endlich Interpretation of Statutes, sec. 241; Sedgwick Statutory Interpretation, 100; *U. S. v. Tyner*, 11 Wall. 88; *Railroad v. Railroad*, 49 Ga. 151; *Wakefield v. Phelps*, 37 N. H. 295; *Johns v. State*, 78 Ind. 332; *Smith v. State*, 14 Mo. 152; *State v. Roller*, 77 Mo. 120. See Statutes, Revision of, Acts 1879, p. 211 *et seq;* also revised law for vagrancy, sec. 3841, Revised Statutes, 1889, enacted in 1879. Under this alleged chapter, 169, vagrancy is not made a crime. What is a crime—felony or misdemeanor? Revised Statutes, 1879, secs. 3973, 3974, 3975, 3976. (3) *Habeas corpus* is the appropriate and only remedy for the grievance of which the prisoner complains. Cooley on Constitutional Limitations, 419; *Ex parte Kearney*, 55 Cal. 212; *Ex parte Wilson*, 131 U. S. 176; Hurd on Habeas Corpus, 328; *Ex parte Shaw*, 70 S. 81; *Ex parte Page*, 49 Mo. 291; *Ex parte Snyder*, 63 Mo. 58; *Ex parte Bethurum*, 66 Mo. 545; *Ex parte Slater*, 72 Mo. 102; *Ex parte Crenshaw*, 80 Mo. 447; *Ex parte Bedard,*

106 Mo. 606; *Renfrow v. Day*, 20 S. W. Rep. 682; *Case of the Negro Somersett*, 20 St. Trials, 3. (4) *Habeas corpus* is a remedy for every illegal imprisonment. Any illegal imprisonment is in violation of the fourteenth amendment of the United States constitution. *Doyle Petitioner*, 27 Am. St. Rep. 759.

*R. F. Walker*, Attorney General, for the state.

(1) Chapter 169, Revised Statutes, 1889, was not repealed by the enactment of section 3841. Repeals by implication are not favored. *Manker v. Faulhaber*, 94 Mo. 430; *State ex rel. v. Frazier*, 98 Mo. 426; *Glasgow v. Lindell*, 50 Mo. 60; *State v. DeBar*, 58 Mo. 395; *State v. Jaeger*, 63 Mo. 403. (2) The act of vagrancy as defined in the statute though partaking of the nature of a crime is not a crime, nor is the latter charged when one is apprehended under the statute. See *People v. Forbes*, 4 Parker Cr. Rep. 611. (3) Nor is a trial by jury essential to trials for vagrancy and disorderly conduct. 4 Blackstone's Commentary, p. 280; *State v. Glenn*, 54 Md. 572; *State v. Anderson*, 40 N. J. Law, 224. (4) The petitioner's arrest and detention is not violative of the thirteenth and fourteenth amendments to the Federal Constitution. *Slaughterhouse cases*, 16 Wall. 36. (5) The constitutionality of vagrancy laws has frequently been sustained by the courts. *State ex rel. v. Maxcy*, 1 McM. S. C. 501; *People v. Forbes*, 4 Park. Cr. R. 611; *People v. Phillips*, 1 Park. Cr. R. 95; *People v. Gray*, 4 Park. Cr. R. 616; *Byers v. Comm.* 42 Pa. St. 89.

SHERWOOD, J.—The validity of the warrant of commitment is questioned by petitioner's counsel on two grounds: *First,* on the ground that the statutory provisions first above quoted have been repealed by nec-

essary implication resulting from the enactment of section 3841, *supra*, and *second*, that if not thus repealed, that they are unconstitutional. Counsel for the state denies that chapter 169 has been repealed in consequence of the enactment of section 3841, and insists that the statutory provisions under which petitioner was found to be a vagrant, are not obnoxious to any constitutional objections.

Where one statute on any given subject is in existence, and another statute is passed on the same subject, but with different provisions, but yet not covering perhaps the whole subject embraced in the first one, and no repealing words are used, it is sometimes quite difficult to determine whether the first statute is repealed in whole or only in part, or whether the provisions of the second statute are merely cumulative in character. This dfficulty confronts us in the present instance.

If, however, chapter 169, a part of which has been quoted, has been repealed as a result of the subsequent enactment, then clearly the justice was without jurisdiction in the premises; the same effect follows if the statute on which his authority is supposed to rest is violative of the organic law.

This being the case, it is thought best to assume, for the purpose of this discussion, that the position of the state is correct, that chapter 169, has not been repealed, as by so doing the merits of this cause can be more satisfactorily reached than if the discussion should proceed on the theory that the statute in question were no longer in force in consequence of the passage of the subsequent act. And should it be determined that chapter 169, is invalid on constitutional grounds, then of course all necessity for determining its repeal or non-repeal is thereby obviated.

Pursuing the course indicated, let comparison be instituted between the statute and the constitution in

·order to settle the question whether the former is in ·conflict with the latter.

Section 2, of article 1, of the constitution of this ·state adopted July 4, 1865, declares: "That there cannot be in this state either slavery or involuntary ·servitude, except in punishment of crime, whereof the ·party shall have been duly convicted."

This section has now become section 31, of article 2, of our present constitution, and is substantially a literal transcript of a like provision contained in the ·ordinance of 1787, penned by the hand of Thos. Jeffer·son, and this in substance is section 1, of the thirteenth ·amendment to the constitution of the United States.

That petitioner has been guilty of no crime, stands ·conceded by the state, as indeed it must have been, considering the terms of the statute under which proceed·ings were had against him.    That those proceedings, if ·allowed to reach their anticipated and ultimate devel·opment would result in the imprisonment of the petitioner, in his being subjected to involuntary servitude ·and to punishment, is equally clear; for imprisonment ·occurs whenever another is detained or deprived of the power of locomotion against his will; involuntary ·servitude is but the condition of a person compelled to do service for another, and punishment is "the penalty for transgressing the law." Wharton's Law Dictionary. Or it is any evil or inconvenience consequent upon ·crime or misdemeanor.  4 Bl. Com. 7.

So that the constituent elements of this case are: Imprisonment, punishment and involuntary servitude without any charge, proof or legislative enactment ·establishing the act of petitioner to have been a crime.

The question then is, can a statute which authorizes such proceedings as are here brought under review, ·stand before the prohibitions of our state and federal ·constitutions?  In this investigation, it is needless to

cite authorities like that of *Byers. v. Commonwealth*, 42 Pa. St. 89, which assert familiar rulings in regard to the arrest and commitment of vagrants, or professional thieves when about to ply their vocation; for in those cases the constitutional point now in hand was neither involved nor passed upon. Precedents precisely in point have not been found, but petitioner's counsel have cited some cases which are analogous to the present one.

Thus in an early case in Indiana, it was ruled that though an adult negress had voluntarily bound herself by indenture and for a valuable consideration to serve the obligee for the term of twenty years, yet it would not be enforced upon her, because to do so would be to impose upon her "involuntary servitude" in violation of the constitution of that state. *Clark's case*, 1 Blackf. 122.

In *Turner's case*, the petitioner was a young negress who was indentured to her former master until she should become eighteen years of age. Under the law of Maryland, persons thus apprenticed were allowed to be assigned and transferred at the will of the master to any person in the county, the authority of the master over such an apprentice was described as a *"property and interest,"* and in other important particulars differed from indentures prescribed for white apprentices, and upon this it was held on *habeas corpus* that such an apprenticeship was involuntary servitude within the meaning of the first clause of the thirteenth amendment of the federal constitution and the petitioner was discharged. 1 Abb. U. S. C. C. 84.

In the *Slaughter Houses cases*, 16 Wall. 36, and in the *Civil Rights cases*, 109 U. S. 36, it was held that while the thirteenth amendment was primarily intended to abolish African slavery, yet it was broad enough to extend, and did extend to every form of involuntary

servitude within the United States, or within their jurisdiction whether the rights involved were those of the white or of other races.  Touching the amendment now under discussion an eminent jurist says: "Throughout the land involuntary servitude is abolished by constitutional amendment, except as it may be imposed in the punishment of crime.  Nor do we suppose the exception will permit the convict to be subjected to other servitude than such as is under the control and direction of the public authorities in the manner heretofore customary.  The laws of the several states allow the letting of the services of the convicts, either singly or in numbers, to contractors who are to employ them in mechanical trades in or near the prison, and under the surveillance of its officers; but it might well be doubted if a regulation which should suffer the convict to be placed upon the auction block and sold to the highest bidder, either for life or for a term of years, would be in harmony with the constitutional prohibition."  Cooley on Constitutional Limitation [6 Ed.], 363.

In this case it will be observed that just what Judge COOLEY supposed might be within the range of possibility, would have occurred but for the intervention of this court.  The case he puts, however, is in relation to suffering a "*convict* to be placed on the auction block and sold to the highest bidder."  If such a proceeding would fall under the ban of constitutional prohibitions, then *a fortiori* would a like result follow where, as here, the proposed object of sale has not been so much as *accused of crime.*

The "*convict*" may lawfully be condemned to involuntary servitude; to imprisonment in punishment of his crime; not so with one in similar circumstances to those of petitioner.  Doubtless he might be proceeded against and punished under the provisions of

section 3841; which makes the act of being a vagrant punishable as a *crime;* but in no other way, if obedience is due to express constitutional prohibitions.

The premises considered, we hold that the law under which petitioner is restrained of his liberty contravenes the constitution of the United States and of this state, and he is therefore entitled to be discharged, and it is so ordered.   All concur.