Van Voorhis, J.
Appellant stands convicted of violating section 436-5.2 of the New York City Administrative Code for having had in his possession, in his right pocket, an ordinary two-bladed small pocket penknife. Appellant contends that carrying a penknife cannot be made a crime, that this section of the Administrative Code constitutes an abuse of the police power of the State and that its language renders it void, in any event, for uncertainty. This local law was then worded as follows:
‘ ‘ § 436-5.2 Possession of knives or instruments, a. Legislative findings. It is hereby declared and found that the unlawful use by persons under twenty-one years of age in public places, streets and parks of the city, of knives and sharp pointed or edged instruments is a menace to the public health, peace, safety and welfare of the people of the city; that the possession in public places, streets and parks of such knives or instruments by such persons has resulted in the commission of many homicides, robberies, maimings and assaults of and upon the people of the city; that this condition encourages and fosters the commission of crimes, and contributes to juvenile delinquency, youth crime and gangsterism; that unless the possession or carrying by persons under twenty-one years of age in public places, streets and parks of the city of such knives or instruments is prohibited, there is danger of an increase in crimes of violence, teen-age gang wars and other conditions detrimental to public peace, safety and welfare; that the necessity for legislative intervention by the enactment of the provisions of this section is imperative and is hereby declared as a matter of legislative determination.
“ b. It shall be unlawful for any person under the age of twenty-one years to carry on his person or have in his possession, in any public place, street or park any knife or sharp *55 pointed or edged instrument which may be used for cutting or puncturing.
* ‘ c. Such person shall not be in violation of this section if his possession of such knife or instrument is then necessary for his employment, trade or occupation, or if such possession is for use while he is engaged in or is proceeding to or returning from a place of hunting, trapping or fishing, and wherever required, is also carrying a currently valid license issued to him under the provisions of section one hundred eighty of the conservation law, or if such person is a duly enrolled member of the Boy Scouts of America or a similar organization or society and such possession is necessary to participate in the activities of such organization or society, or if the said knife or instrument is carried under circumstances that tend to establish that its possession is for a lawful purpose, not however to include self-defense or amusement.
“ d. Violation of this section shall be an offense punishable by a fine of not more than fifty dollars, or by imprisonment not exceeding thirty days, or by both such fine and imprisonment.”
This is a broad enactment designed to meet a limited though serious evil. Its validity depends not upon the object toward which it is directed but on the method by which it is sought to be attained. We shall first consider appellant’s point that it is void for uncertainty. “ Statutes which create crimes must be definite in specifying conduct which is condemned or prohibited. They must afford some comprehensible guide, rule or information as to what must be done and what must be avoided, to the end that the ordinary member of society may know how to comply with its requirements.” (People v. Grogan, 260 N. Y. 138, 145, per Crane, J.; People v. Shifrin, 301 N. Y. 445, 447; People v. Diaz, 4 N Y 2d 469.) The vice in statutory law of this nature is that it conceals what persons are included and what acts are prohibited (United States v. Cardiff, 344 U. S. 174). As was remarked by Mr. Justice Frankfurter in Winters v. New York (333 U. S. 507, 540): “ Definiteness is designedly avoided so as to allow the net to be east at large, to enable men to be caught who are vaguely undesirable in the eyes of police and prosecution, although not chargeable with any particular offense.”
This section of the Administrative Code is too vague and too general to indicate what persons are included or what acts are *56 prohibited (United States v. Cardiff, supra). Carrying a pocket penknife or many of the other articles included in this section is not evil in itself. This is not a case where conceptions of moral guilt can furnish some measure of the legislative intent. There is no moral guilt in carrying a penknife, apart from this local law. Guilt, if any, consists entirely in violation of a legislative fiat. Therefore, it is necessary that the elements of the offense be spelled out in words even more explicitly, so that the citizen may receive unequivocal warning before conduct otherwise innocent be made the cause of fine or imprisonment (People v. Shifrin, supra). The first uncertai nty in section 436-5.2 of the Administrative Code arises from not knowing what is covered by the description of prohibited instruments. Subdivision b states that it shall be unlawful for minors to carry ‘ ‘ any knife or sharp pointed or edged instrument which may be used for cutting or puncturing.” This has been construed by .the officers charged with its enforcement to include more than instruments which would ordinarily be termed weapons, as is shown by the circumstance that appellant has been prosecuted and convicted for carrying a penknife. The theory is that even a penknife could be used at close range to maim or perhaps kill another person. Eyes could, of. course, be put out by “ sharp pointed ’ ’ instruments such as fountain pens, nails or a variety .of other trinkets or gadgets that could be carried on the person. Under opportune circumstances, any device might be used to maim or kill, which can even be accomplished by using the feet or hands with no implement at all. Shakespeare pointed out that death could be caused by “ a bare bodkin.” This section of the Administrative Code would prevent a minor from carrying a bodkin in the streets, it may be assumed, whether a bodkin be a poniard or a needle, at least if he were-doing so for amusement or in self-defense. It is more difficult to answer what would happen, under the language of this enactment, if he bought knitting needles, let us suppose, in a department store, and was carrying them home to give to his mother or sister. What would happen, .it may be wondered, if the sister, being also a minor, bought knitting needles herself and took them toward home in order to engage in this familiar feminine pastime? Would she be guilty of a violation? The language does not distinguish between the sexes. A knitting needle is a *57 pointed instrument that may be used for puncturing. It can be as dangerous an implement in delinquent hands as a penknife or a fountain pen. A safety razor is a sharp edged instrument that might be used for cutting. Are youths of 19 or 20 years prohibited from buying safety razors, nail files, or other potentially dangerous toilet articles if they are carried home on the person through the streets ? Enough has been said, to indicate the vagueness of the language which attempts to define what kinds of instruments are covered. It is not limited to daggers, poniards nor even jackknives. The definition has no boundary excluding from the section’s coverage the most commonly used and innocently possessed devices of everyday life.
It is said that the language purports to forbid carrying such articles only under certain circumstances. It excludes instances where ‘1 the said knife or instrument is carried under circumstances that tend to establish that its possession is for a lawful purpose, not however to include self-defense or amusement.” This language does not help to save the validity of the section, but only renders it more obscure and contradictory. Except for self-defense or amusement (a boy could not carry a penknife for self-protection, nor in order to whittle or play mumble-the-peg), this section does not purport to prohibit carrying knives or any kind of instrument for a lawful purpose. Carrying a penknife is lawful, unless this section renders it unlawful. The net result, when analyzed, is that this section prohibits what is lawful only if it is unlawful. This is self-contradictory. No one can know what it means.
This section does not say that such instruments shall be presumed to have been carried in the streets by minors with intent to commit homicide, robbery, maiming or assault, unless the accused shall demonstrate that he had the article on his person to serve some special purpose that is lawful, e.g., that he carried a penknife in order to sharpen pencils to do his schoolwork. If the draftsman of this local law had included carrying the article with criminal intent, there would have been less difficulty in sustaining it as subdivision 11 of section 722 of the Penal Law was sustained in People v. Pieri (269 N. Y. 315) on the basis of performing the acts forbidden while harboring an evil intent. There, intent was an ingredient in the offense. Here, upon the other hand, necessity of proving criminal intent by the proseen *58 tion was exactly what the draftsman of this local law aimed to avoid. He sought to make this alleged offense malum prohibitum, but created an exception in case the accused proved that he was not actuated by purposes that were malum in se. This adds to the confusion. A defendant is to be exonerated if he proves that he was not animated by criminal intent — i.e., that he carried the penknife for lawful purposes —-notwithstanding that carrying it for criminal purposes is no part of the offense. The purpose to be served by this enactment could only be to enable prosecution of those whom the police believe to be bad boys or girls. That does not warrant conviction of a criminal or quasi-criminal offense. This section is subject to the same defect as the statute struck down in Lanzella v. New Jersey (306 U. S. 451, Ann. 83 L. ed. 893 et seq.) which attempted unsuccessfully to create the crime of being a ‘1 gangster ’
Crimes may be created without intent as a factor other than an intent to commit the prohibited act (People v. Persce, 204 N. Y. 397, 401-402), but there must be some reasonable relationship between the public safety, health, morals or welfare and the act prohibited (People v. Bunis, 9 N Y 2d 1; Good Humor Corp. v. City of New York, 290 N. Y. 312; People v. Belcastro, 356 Ill. 144, Ann. 92 A. L. R. 1228; City of Portland v. City of Bangor, 65 Me. 120; Matter of Thompson, 117 Mo. 83; Ex parte Hudgins, 86 W. Va. 526, Ann. 9 A. L. R. 1366). Loitering under subdivision 2 of section 1990-a of the Penal Law (People v. Bell, 306 N. Y. 110) or under section 7 of the Waterfront Commission Act (People v. Merolla, 9 N Y 2d 62), disorderly conduct by congregating on a public street in violation of subdivision 3 of section 722 with intent to provoke a breach of the peace coupled with refusal to move when ordered by the police (People v. Galpern, 259 N. Y. 279), and vagrancy under section 887 of the Code of Criminal Procedure (People v. Sohn, 269 N. Y. 330) have been held inferentially to be authorized exercises of the police power. It is for the courts to determine, not how the police power should be exercised, but whether there is reasonable relation between the statute or ordinance and the object sought to be attained (People v. Bunis, supra; Good Humor Corp. v. City of New York, supra, pp. 320-321). In People v. Belcastro (supra) the Illinois Supreme Court held unconstitutional a statute making subject to conviction as *59 vagabonds all persons reputed to be habitual violators of the criminal laws, remarking that the Legislature may not delegate to administrative officers the determination of what the law should be, or to determine what acts are necessary to effectuate the law. A statute authorizing the commitment of vagrants on the ex parte determination of two overseers of the poor has been held unconstitutional in Maine as depriving persons of liberty without due process of law (City of Portland v. City of Bangor, supra). The same result attended a statute in Missouri which authorized one not accused of crime to be hired for a specified period to the highest bidder after a finding of vagrancy by a jury (Matter of Thompson, supra).
Even if the local law in suit had required the prosecution to show an intention to use the penknife for some unlawful purpose, there could have been no statutory presumption of evil intent from mere possession of the penknife in the public street. Legislative presumptions, to be valid, must have enough basis in human experience so that the presumption has some fair relation to or natural connection with the fact on which the presumption rests (McFarland v. American Sugar Co., 241 U. S. 79, 86 [Holmes, J.]; People v. Russo, 278 App. Div. 98, 101-104 [Cohn, J.], and cases cited, affd. 303 N. Y. 673). To apply a statutory presumption of unlawful intent ‘ ‘ to the possession of a tool of everyday use violates the spirit and intent of enforcement procedure.” (People v. Adamkiewicz, 298 N. Y. 176, 179.) A presumption of unlawful intent is permissible only with regard to instruments that are ‘ ‘ ‘ not likely * * * to be found in the possession of innocent parties ’ ” (People v. Terra, 303 N. Y. 332, 336, appeal dsmd. 342 U. S. 938), and whose “Accidental and innocent possession * * * would be extraordinary and unusual ”. (Tot v. United States, 319 U. S. 463, 470.)
Section 436-5.2 of the Administrative Code is patterned to some extent on section 1897 of the Penal Law, but with the important distinction that the Legislature limited the malum prohibitum crime to the possession of articles which, from their nature, are not likely to be found on innocent persons, i.e., “ blackjack, slungshot, billy, sandclub, sandbag, metal knuckles, bludgeon”. The mere possession of articles of that kind was made enough on which to convict. But ‘ ‘ intent to use the same *60 unlawfully against another ’ ’ was required by the Legislature before a person could be convicted of carrying “ a dagger, dirk, dangerous knife, razor, stiletto, imitation pistol, machine-gun, sawed off shot-gun, or any other dangerous or deadly weapon ”. These last are more dangerous than penknives but, owing to the possibility that some of them might be innocently possessed, the Legislature required proof that they were possessed with criminal intent. When it came to the enactment of section 436-5.2 of the Administrative Code, the need for proving criminal intent was abolished even in the case of possession of such ordinarily innocuous articles as penknives or fountain pens. In People v. Adamkiewicz (supra) it was held that intent to use an icepick for criminal purposes could not be inferred from its possession. That accords with the analysis of section 1897 of the Penal Law in People v. Persce (204 N. Y. 397, supra).
It is not for us to say that a statute or local law could go no farther than section 1897 of the Penal Law and still be constitutional. Nevertheless section 436-5.2 of the Administrative Code, in our judgment, exceeds the latitude which is open to the municipal legislative body in exercising the police power. Possession of penknives, knitting needles, fountain pens and the like is so far from being ordinarily for criminal purposes, that merely carrying them on the person cannot be regarded as a criminal or quasi-criminal offense. It bears no relation to the public safety, and consequently is not a valid use of the police power.
Juvenile delinquents can be highly dangerous, especially in large cities. They cannot be legislated out of existence, however, nor be held guilty of offenses on the sole basis of status, or except insofar as they may be found guilty from their conduct of violating criminal or quasi-criminal statutes that are sufficiently definite so that one may know in advance what is prohibited, and which represent a proper exercise of the police power. A statute or local law would not be valid which prevented all persons under 21 years of age from using the streets or other public places of a city, for the reason that they might turn out to be juvenile delinquents and hence potentially dangerous. Such a “preventive” law would go too far. Neither would it be valid if it forbade their use to minors having buttons on their coats, or fountain pens or penknives in their *61 pockets. We do not hold that no statute would be valid distinguishing between minors and adults in prohibiting weapons or potential weapons which can be carried on their persons, nor do we decide in advance what might validly be covered in all cases by a statute or local law designed to serve the objective of this section of the Administrative Code. We hold merely that this enactment is unconstitutional and void for the reasons above stated.
The judgment of conviction of appellant should be reversed and the complaint dismissed.