Harold J. Hughes, J.
Plaintiff has moved for a preliminary injunction restraining defendant from enforcing ECL 9-0305 which regulates the use of advertising signs in the Catskill Park. The motion was brought on by an order to show cause which temporarily restrained the enforcement of this statute pending determination of the motion. Defendant has cross-moved for an order dismissing the complaint and has requested that the motion be treated as one for summary judgment pursuant to CPLR 3211 (subd [c]). Finally, one Charles A. Dale, Jr., president of the Outdoor Advertising Association of New York, has moved to intervene as an additional party plaintiff.
*602 The essential facts do not appear to be in dispute. Plaintiff is the owner of approximately 97 outdoor advertising signs located in the Catskill Park, all of which were erected prior to the enactment of ECL 9-0305. Apparently, over 95% of these signs are located within 660 feet of various Federally-aided primary highways located in the Catskill Park.
ECL 9-0305 prohibits the erection of advertising signs or structures within the Catskill and Adirondack Parks, except under written permit from the Department of Environmental Conservation. It provides that signs within the Catskill Park existing prior to May 26, 1969, the date when the section was made applicable to the Catskill Park, may continue to be maintained without a permit until January 1, 1976. The parties agree that plaintiff’s signs are not eligible for permits under rules promulgated by the Department of Environmental Conservation (see 6 NYCRR Part 195), and, hence, on January 1, 1976 the signs were subject to removal.
Plaintiff commenced this action seeking: (i) a declaratory judgment that ECL 9-0305 is unconstitutional on several grounds including that it requires the removal of the advertising signs without just compensation; (ii) a declaratory judgment that section 88 of the Highway Law requires payment of just compensation for the removal of those signs that are located within 660 feet of any interstate or Federally-aided primary highways; and (iii) a permanent injunction preventing defendant from removing plaintiff’s signs without paying just compensation.
Before addressing plaintiff’s constitutional arguments, let us turn to plaintiff’s contention that section 88 of the Highway Law requires payment of just compensation for the removal of the majority of plaintiff’s signs which are located within 660 feet of Federally-aided primary highways running through the Catskill Park.
Section 88 was enacted to implement the Federal Highway Beautification Act (L 1968, ch 581, § 1). Subdivision 7 thereof provides that compensation is to be paid for the taking of certain outdoor advertising signs and displays. Basically, compensation is to be paid for those signs that were lawfully in existence at the time they became subject to the provisions of section 88. Section 88 was enacted in 1968 and became effective on May 10, 1969.
ECL 9-0305, which prohibits the erection of advertising signs in the Catskill Park without a permit, is silent with *603 respect to whether compensation must be paid for the removal of pre-existing signs which are not eligible to receive permits. Assuming for purposes of this motion that virtually all of plaintiffs signs would qualify for the payment of compensation under the provisions of section 88 of the Highway Law, the issue presented is whether the provisions of ECL 9-0305 require a different result.
Section 88 of the Highway Law was enacted by chapter 581 of the Laws of 1968. As indicated above, subdivision 7 of this section explicitly provides for the payment of compensation for the taking of certain pre-existing advertising signs. ECL 9-0305 was made applicable to the advertising signs in the Catskill Park by chapter 1052 of the Laws of 1969, and makes no mention of the payment of compensation. Chapter 1052, in fact, provided for an amortization period to be fixed individually for each pre-existing advertising sign in the Catskill Park. This would appear to clearly show a legislative intent to provide an amortization period as an alternative to the payment of compensation for pre-existing advertising signs in the Catskill Park. Chapter 392 of the Laws of 1970 further amended this section to provide a fixed amortization period of approximately six and one-half years rather than the original, individually determined, amortization periods. This would appear to further strengthen the conclusion that the Legislature specifically considered the issue of compensation for the removal of pre-existing signs in the Catskill Park and concluded that an amortization period rather than monetary compensation was to be provided. This conclusion is supported by language in the decision of the Appellate Division, Fourth Department in Rochester Poster Adv. Co. v Town of Brighton (49 AD2d 273, 276): "the enactment by the Legislature of section 9-0305 of the Environmental Conservation Law — limiting the continuance of nonaccessory signs without compensation”. While the decision in Rochester Poster Adv. Co. did not involve the construction of ECL 9-0305, the Appellate Division did specifically consider the effect of section 88 of the Highway Law in a similar situation and the quoted language indicates that the court implicitly construed ECL 9-0305 as precluding the payment of monetary compensation.
The court finds, then, that ECL 9-0305 does not require the payment of compensation for the removal of advertising signs for which compensation would otherwise be required by section 88 of the Highway Law. Plaintiffs argument that this *604 conclusion means that under the provisions of the Federal Highway Beautification Act (US Code, tit 23, §§ 131, 136, 319) this will require a 10% reduction in Federal highway funds payable to the State is irrelevant. For even if plaintiff’s analysis of the effect of the court’s construction of the pertinent statutory provisions on the amount of Federal aid is correct, that cannot, of course, change the meaning of the language that the Legislature has enacted.
Turning now to the constitutional objections that have been raised, plaintiff first contends that ECL 9-0305 violates the Fifth and Fourteenth Amendments of the United States Constitution and article I (§ 7, subd [a]) of the State Constitution which prohibit the taking of property by the State without the payment of just compensation. It is clear, however, that the State may regulate the erection and maintenance of outdoor advertising under the police power (see, e.g., Railway Express v New York, 336 US 106; People v Goodman, 31 NY2d 262; New York State Thruway Auth. v Ashley Motor Ct., 10 NY2d 151). In fact, the predecessor to present ECL 9-0305 was upheld as a valid exercise of the police power many years ago by the Appellate Division, Third Department, in People v Sterling (257 App Div 560). The opinion in a subsequent appeal involving the same parties implied that the statute could not be sustained as an exercise of the police power for aesthetic considerations alone, although the court found it unnecessary to decide that constitutional issue (People v Sterling, 267 App Div 9). Subsequent decisions have resolved that issue, and it is now well settled that outdoor advertising signs may be regulated pursuant to the police power for aesthetic purposes alone (see, e.g., People v Goodman, 31 NY2d 262, supra; People v Stover, 12 NY2d 462; Matter of Cromwell v Ferrier, 19 NY2d 263). Many statements have been written explaining this result in terms of the importance of aesthetic values to society, but perhaps no one has expressed this view more memorably than Chief Judge Pound in what has been described as an "oratorical flight”: "Beauty may not be queen but she is not an outcast beyond the pale of protection or respect. She may at least shelter herself under the wing of safety, morality or decency.” (People v Sterling, 267 App Div 9, 12, supra, quoting Perlmutter v Greene, 259 NY 327, 332.)
Of course, as with every enactment under the police power, the means adopted in the statute in question must be reasonably related to the community policy sought to be imple *605 mented and must not be unduly oppressive (Matter of Tyson, Inc. v Tyler, 24 NY2d 671; People v Bunis, 9 NY2d 1; and People v Munoz, 9 NY2d 51). "The exercise of the police power should not extend to every artistic conformity or nonconformity. Rather, what is involved are those aesthetic considerations which bear substantially on the economic, social, and cultural patterns of a community or district” (Matter of Cromwell v Ferrier, supra, p 272).
In creating the Catskill Park and in extending the applicability of ECL 9-0305’s regulation of outdoor advertising signs to the park, the Legislature has recognized the special natural beauty of the land in the park and has acted to conserve and preserve the area for future generations in its relatively unspoiled and undeveloped condition (ECL 9-0305, subd 1). The special importance of the Catskill Park is emphasized by the protection afforded it by the State Constitution (art XIV). This is not a case where the Legislature has gone too far in the name of aesthetics (see People v Stover, 12 NY2d 462, 468, supra). The statute has a valid objective under the police power, the means employed are reasonably related to this objective and, under all the circumstances, the legislation is not arbitrary, unreasonable or oppressive.
Plaintiff further contends that the statute is unconstitutional because all of its signs were in existence prior to the effective date of the applicability of the statute to the Catskill Park. The police power, however, is the "least limitable of the powers of government” (People v Nebbia, 262 NY 259, 270 affd 291 US 502). Even assuming that the plaintiff possessed valid and subsisting property rights which the statute in question abrogated, this would not appear to provide a sufficient basis for declaring the statute in question unconstitutional (Whitmier & Ferris Co. v State of New York, 20 NY2d 413; Terrace Hotel Co. v State of New York, 19 NY2d 526; New York State Thruway Auth. v Ashley Motor Court, 10 NY2d 151, supra). In any event, the statute in question actually allows a six and one-half-year amortization period for pre-existing signs. Nonconforming uses may be eliminated by amortization over a reasonable period of time (Matter of Off Shore Rest. Corp. v Linden, 30 NY2d 160, 164; Matter of Harbison v City of Buffalo, 4 NY2d 553, 561) and a six and one-half-year period would seem to be a reasonable amortization period for such outdoor advertising signs (see, e.g., People v Goodman, 31 NY2d 262, supra [two-year amortization period]; Rochester *606 Poster Adv. Co. v Town of Brighton, 49 AD2d 273, supra [34-month amortization period]).
Plaintiff also contends that the statute in question violates the First Amendment guarantee of free speech. In New York State Thruway Auth. v Ashley Motor Court (10 NY2d 151, supra, mot to amend remittitur granted 10 NY2d 814), the Court of Appeals specifically held that just such an outdoor advertising statute did not infringe upon the constitutional guarantees of freedom of speech and freedom of the press under the First Amendment. However, subsequent to that decision, the United States Supreme Court has now made clear that commercial speech is protected by the First Amendment (Virginia Pharmacy Bd. v Virginia Consumer Council, 415 US 748). It is also clear, however, that some forms of commercial speech regulation are still permitted. Restrictions with respect to time, place and manner, for example, are still permissible, provided that they are justified without reference to the content of the regulated speech, that they serve a significant government interest, and that in so doing they leave open ample alternative channels for communication of the information (Virginia Pharmacy Bd. v Virginia Consumer Council, supra). In the present case, there is no regulation with respect to the content of the advertising, the regulation is intended to serve the important governmental interest implicit in the exercise of the police power, and there are ample other channels of communication available in the affected area such as radio, television and newspapers. This court simply does not believe that the First Amendment, however cherished its protections may be, will be applied to preclude the State from adopting reasonable measures to control the "ugliness, distraction, and deterioration” (Matter of Cromwell v Perrier, 19 NY2d 263, supra, p 272) which can result from the erection of advertising signs and billboards.
The court also finds plaintiff’s equal protection argument to be without merit. Exact equality is not a prerequisite to equal protection within the meaning of the Fourteenth Amendment (Norvell v Illinois, 373 US 420; Atchinson, Topeka & Santa Fe R. R. v Matthews, 174 US 96).
Since the plaintiff has failed to establish a "clear right” to the relief requested, its motion for a preliminary injunction must be denied (7A Weinstein-Korn-Miller, NY Civ Prac, par 6301.18).
*607 Finally, the court finds that the Outdoor Advertising Association of New York is not entitled to intervene as a party plaintiff as of right since the interests of the association have been adequately represented by the plaintiff in this action and the action does not involve a disposition of or claim for damages to property in which the association may be adversely affected by the judgment (CPLR 1012, subd [a]). The court will not exercise its discretion to allow the association to intervene by permission pursuant to CPLR 1013 since the intervention would serve to unduly delay the determination of the action.
Plaintiff’s motion for a preliminary injunction and the motion of the Outdoor Advertising Association of New York to intervene are denied, and the cross motion of the defendant for summary judgment declaring the subject statute to be valid is granted, all without costs.