GREEN, Judge,
dissenting.
Respectfully, I believe that sections 21-30.01(e)(2) and (3) of the Dade County Graffiti Ordinance are facially unconstitutional in that they are violative of the due process clause of both the state and federal constitutions.
I.
Section 21-30.01(e)(2) of the graffiti ordinance criminalizes a minor’s mere possession of spray paint and broad-tipped markers on public property, highways, and streets, except when in the company of a supervising adult. Metropolitan Dade County, Code § 21-30.01(e)(2) (1994). Section 21-30.01(e)(3) of the ordinance criminalizes a minor’s mere possession of spray paint and markers on private property without the consent and knowledge of the property owner. Neither of these subsections require a showing by the state of the minor’s intent to make graffiti while he or she is in possession of the spray paint or markers.[2] Any minor who is found to be in violation of these sections is subject to a mandatory fine of $250.00 for a first offense, $500.00 for a second offense, and $1000.00 for each subsequent offense, and/or imprisonment in the county jail for a term not to exceed 60 days. See id. at § 21-30.01(e)(4). In the case of a minor, the parents or legal guardian are responsible for the payment of all fines, and their failure to do so will result in the filing of a lien against their property. See id.
Thus, a minor is subject to criminal penalties under the challenged subsections when travelling between two points where his or her possession of spray paint and jumbo markers is permissible. For example, the minor science student or school pep squad member who is given spray paint or markers by a teacher to complete a school project at home is subject to being fined and/or jailed under the graffiti ordinance if the student is stopped by a police officer en route home without being accompanied by an adult. Further, a minor who may be spotted by an officer in the minor’s own yard spray painting a go-cart or model airplane is subject to having his or her actions criminalized under the ordinance if his or her parents are unaware of this activity or have not consented to the same.[3] Aside from the absurdity of these results under the ordinance, the ordinance violates the substantive due process rights of these minors in that it criminalizes the mere possession of inherently innocent items without requiring the state to show any intent to violate the county’s anti-graffiti ordinance. As such, in accordance with a long line of established cases from our supreme court, these subsections of the anti-graffiti ordinance are an unconstitutional exercise of the county’s police power.
II.
Initially, it should be noted that although the federal constitution contains no express substantive due process provision, the United States Supreme Court stated in Bowers v. Hardwick, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), that:
[Djespite the language of the Due Process Clauses of the Fifth and Fourteenth Amendments, which appears to focus only on the processes by which life, liberty, or property is taken, the cases are legion in which those Clauses have been interpreted *599 to have substantive content, subsuming rights that to a great extent are immune from federal or state regulation or proscription.
Id. at 191, 106 S.Ct. at 2844. Since the due process provision of Florida’s constitution is patterned after the due process provision of the federal constitution, see Cash v. Culver, 122 So.2d 179, 182 (Fla.1960); see generally State v. Saiez, 489 So.2d 1125, 1127 (Fla.1986), the Florida Constitution similarly provides an individual with substantive due process rights. Specifically, with regard to criminal statutes, substantive due process places limitations on the manner and extent to which an individual’s conduct may be deemed criminal. See 1 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 2.12, at 208 (1986).
To withstand scrutiny under substantive due process, a statutory prohibition must be rationally related to a legitimate governmental objective or purpose. See Lite v. State, 617 So.2d 1058, 1059 (Fla.1993); Saiez, 489 So.2d at 1128; see also L. Maxcy, Inc. v. Mayo, 139 So. 121, 130, 103 Fla. 552, 553 (1931). On the other hand, however, if the statutory provision infringes upon a fundamental constitutional right, the statute is subject to strict scrutiny, which is to say that it must be necessary to promote a compelling governmental interest. See In re Forfeiture of 1969 Piper Navajo, 592 So.2d 233, 236 (Fla.1992). Clearly, it cannot be realistically asserted (and D.P. does not so assert) that there is a fundamental right to the possession of spray paint or jumbo markers. Thus, the constitutional analysis and review of sections 21-30.01(e)(2) and (e)(3) must necessarily be confined to the rational basis test.[4]
Under the rational basis test, a statutory prohibition comports with due process if it bears a real and substantial relationship to the public’s health, safety or morals, and is not unreasonable, arbitrary or capricious.[5] See Saiez, 489 So.2d at 1127; In re Forfeiture of 1969 Piper Navajo, 592 So.2d at 236; L. Maxcy, Inc., 139 So. at 129, 103 Fla. at 570-71; see also City of St. Petersburg v. Calbeck, 114 So.2d 316, 319-20 (Fla. 2d DCA 1959).
I do not believe that it can be realistically maintained, as the state attempts to do on this appeal, that sections 21-30.01(e)(2) and (e)(3) of the graffiti ordinance were enacted for the protection of the public’s health, safety, welfare or morals. They were clearly enacted solely for the protection of property within the county. Moreover, the act of criminalizing the possession of spray paint and/or jumbo markers by all unsupervised minors, regardless of their intent, is wholly unreasonable, arbitrary, and capricious and is not reasonably related to the county’s legitimate objective in protecting property from graffiti. See State v. Walker, 444 So.2d 1137, 1140 (Fla. 2d DCA), aff'd, 461 So.2d 108 (Fla.1984) (where then Judge Grimes succinctly stated: “Without evidence of criminal behavior, the prohibition of this conduct'lacks any rational relation to the legislative purpose []” and “criminalizes activity that is otherwise inherently innocent.”). For these reasons, I see no legal or logical reason why the subject subsections of the graffiti ordinance do not squarely fall within that samé line of supreme court decisions which have consistently struck down laws which seek to criminalize inherently “innocent activity” without evidence of criminal intent. See Wyche v. State, 619 So.2d 231, 235-37 (Fla.1993) (ordinance prohibiting a “known prostitute” from engaging in routine activities such as stopping automobiles and engaging passers-by in conversation violated substantive due process); Saiez, 489 So.2d at 1127-29 (statute which criminalized mere possession *600 of credit card embossing machine without regard to intent of possessor violated due process); Robinson v. State, 398 So.2d 1076, 1077 (Fla.1980) (statute making the wearing of a mask in public a crime struck down where statute was “susceptible of application to entirely innocent activities” and was “susceptible of being applied so as to create prohibitions that completely lack any rational basis”); Foster v. State, 286 So.2d 549, 551 (Fla.1973) (“It would be an unconstitutional act — in excess of the State’s police power — to criminalize the simple possession of a screwdriver, just as much as it would be to criminalize the possession of such items as ladies’ hat pins, automobile tire iron kits, et cetera, without first requiring that they first be used as burglary tools.”); Delmonico v. State, 155 So.2d 368, 368-70 (Fla.1963) (statute which criminalized the possession of spearfishing equipment violated due process because “the law penalizes the mere possession of equipment which in itself is wholly innocent and virtually indispensable to the enjoyment of the presently lawful and unrestricted right of appellants in common with the public at large to engage in spearfishing in waters on all sides of the area covered by the statute”); see also In re T.C., 573 So.2d 121, 123 (Fla. 4th DCA 1991) (where court construed statute prohibiting planting of a hoax-bomb to include element of intent which therefore precluded statute from being constitutionally infirm under “innocent acts doctrine”); Walker, 444 So.2d at 1140 (without evidence of criminal behavior, statute prohibiting removal of lawfully dispensed controlled substance from its original container lacked any rational relation to the legislative purpose of controlling drug distribution). But cf. L. Maxcy, Inc., 139 So. at 129-31, 103 Fla. at 572-77 (upholding law prohibiting use of arsenic spray on citrus fruit where such practice is of “general and predominantly evil tendency, so that it is impossible to distinguish the evil from the innocent in it except as to degree”).
The majority first attempts to distinguish this long line of cases on the grounds that they all placed an outright ban on possession of the prohibited object or activity, and the challenged graffiti subsections permit a minor’s possession of spray paint and/or jumbo markers under certain delineated circumstances. Majority op. at 596.[6] With all due respect, I do not believe that such a distinction exists, or if it does exist, is of any meaningful significance to this constitutional analysis. First of all, virtually all of the statutes in the “innocent acts” line of cases similarly did not place an outright ban on the proscribed items. See, e.g., Saiez, 489 So.2d at 1126 (possession of credit card embossing machine prohibited only when credit card issuer has not consented to the preparation of the cards); Robinson, 393 So.2d at 1076 (wearing of mask, hood or other device to conceal any portion of face, prohibited only within the public property of any municipality or county of the state); Delmonico, 155 So.2d at 369, n. 3 (use or possession of spear fishing equipment prohibited only on the surface of and under the waters in the area in Monroe County set forth in statute).
Further, I note that courts of other jurisdictions have similarly struck down laws that have prohibited the use or possession of items that have some lawful and unlawful uses, as being violative of substantive due process, if the prohibition is “too sweeping in encompassing activity which is wholly innocent.” See 1 LaFave & Scott, supra, at- § 2.12(e). In People v. Munoz, for example, a criminal statute was enacted which prohibited anyone under 21 years of age, in a public place, from’ being in possession of any knife or sharp pointed or edged instrument which could be used for cutting or puncturing.[7] *601 See 211 N.Y.S.2d at 148, 172 N.E.2d at 537. A minor would not be in violation of this law:
[I]f his possession of such knife or instrument is then necessary for his employment, trade or occupation, or if such possession is for use while he is engaged in or is proceeding to or returning from a place of hunting, trapping or fishing, and wherever required, is also carrying a currently valid license issued to him under the provisions of section one hundred eighty of the conservation law, or if such person is a duly enrolled member of the Boy Scouts of America or a similar organization or society and such possession is necessary to participate in the activities of such organization or society, or if the said knife or instrument is carried under circumstances that tend to establish that its possession is for a lawful purpose, not however to include self-defense or amusement.
Id. The court found that although this statute was “designed to meet a limited, though serious evil,” the statute was nevertheless an invalid exercise of police power because there was no reasonable relation between the evil and the means chosen. See id., 211 N.Y.S.2d at 148-49, 152-53, 172 N.E.2d at 537, 540. The court pointed out that the statute could apply to pen-knives, knitting needles, etc., which are “so far from being ordinarily for criminal purposes, that merely carrying them on the person cannot be regarded as a criminal or quasi-criminal offense.” Id., 211 N.Y.S.2d at 153,172 N.E.2d at 540.
In People v. Bunis, 9 N.Y.2d 1, 210 N.Y.S.2d 505, 172 N.E.2d 273 (1961), the Court of Appeals of New York struck down a statute which prohibited the sale of eoverless books and magazines, regardless of the circumstances. It observed that what was “wrongful [was] not the sale of coverless magazines, but rather their sale by a vendor who takes part in a scheme to defraud a magazine publisher.” Id., 210 N.Y.S.2d at 507, 172 N.E.2d at 274. Insightfully, the court also stated that:
[B]y denominating as criminal all sales, section 436-d necessarily tends to prevent corrupt sales. But, even were we to suppose that it had power to prohibit such corrupt sales, it is unreasonable and beyond the legitimate exercise of the police power for the Legislature to interdict all sales, permissible and illicit alike, in order to prevent those which are illicit. The Legislature may not validly make it a crime to do something which is innocent in itself merely because it is sometimes done improperly, sometimes attended by improper motives or done as part of an illegal scheme.

Id.

Similarly, the Louisiana Supreme Court in State v. Birdsell, 235 La. 396, 104 So.2d 148 (1958), addressed' a statute which prohibited the possession of a hypodermic syringe and needles without regard to the intent of the possessor. The high court found the statute unconstitutional as an unreasonable and thus an improper exercise of police power in violation of the due process clause of the federal constitution:
Thus, we are concerned here with an object that is not inherently dangerous, noxious or harmful. Rather, the article in question, as is well recognized, is widely used for numerous beneficial and helpful purposes. True, it may be employed in the illegal administering of narcotics with deleterious results; however, so may numerous other generally advantageous appliances be used for ulterior motives. For example, the blow torch is frequently resorted to by burglars in the opening or [sic] iron safes. Yet, certainly it would not be' reasonable for the Legislature (as a means of suppressing safe robberies) to denounce as a crime the possessing of a blow torch without, at the same time, permitting an accused possessor to show (in his defense) that 'his possession was for a lawful purpose.
Id., 104 So.2d at 153-54.
III.
We are likewise confronted in this case with two inherently innocuous items (i.e, *602 spray paint and jumbo markers) that are widely utilized both privately and commercially by minors and adults alike for a variety of innocent purposes as well as to make graffiti. It is true, as a general proposition, that the “[regulation of items that have some lawful as well as unlawful uses is not an irrational means of discouraging [criminal behavior].” Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497 n. 9, 102 S.Ct. 1186, 1192 n. 9, 71 L.Ed.2d 362 (1982). Although the regulation of such items is not per se irrational, the legislature still has constitutional constraints when enacting a blanket or conditional prohibition on the possession or use of such items. See Saiez, 489 So.2d at 1128-29; Munoz, 211 N.Y.S.2d 146, 172 N.E.2d at 540; see also People v. Nangapareet, 29 Misc.2d 984, 210 N.Y.S.2d 446, 448 (N.Y. County Ct.1960) (“[T]he judiciary must be ever alert to insure that [police] power not be exercised in an arbitrary and unreasonable fashion.”). Our state supreme court has said that any prohibition against the possession of objects having a common and widespread lawful use must be “reasonably ‘required as incidental to the accomplishment of the primary purpose of the Act.’” Delmonico, 155 So.2d at 370 (quoting Caldwell v. Mann, 157 Fla. 633, 26 So.2d 788, 790 (1946)); see also Saiez, 489 So.2d at 1128. To be sure, sections 21-30.01(e)(2) and (e)(3) will simplify the state’s burden of enforcing the graffiti ordinance against minors, who are deemed to be the primary makers of graffiti.[8] “Expediency, however, is not the test....” Delmonico, 155 So.2d at 370; see also Saiez, 489 So.2d at 1129. I therefore cannot agree that the county can constitutionally criminalize all possession of spray paint and jumbo markers by unsupervised minors on public property, regardless of the circumstances, in the hopes of ensnaring the actual graffiti artists. Thus, based upon the “innocent acts doctrine” espoused in the Saiez line of cases, I do not believe that sections 21-30.01(e)(2) and (e)(3) of the graffiti ordinance can pass constitutional muster.
IV.
The challenged subsections of the graffiti ordinance are virtually indistinguishable from the statutes and ordinances repeatedly struck down under the “innocent acts doctrine” with one exception; the challenged subsections under the graffiti ordinance pertain solely to minors. For this reason, I believe that the central issue in this case is whether minors possess diminished substantive due process rights when it comes to statutes or ordinances that seek to criminalize the possession of inherently innocent items which can be used in criminal endeavors. Neither our state nor the federal supreme court appears to have squarely addressed this issue, but I do not believe that existing law supports the notion that the substantive due process rights of minors are not co-equal to those of adults under the “innocent acts doctrine.” To begin with, all of the statutes, ordinances, etc., which were struck down as unconstitutional by our state supreme court under the Saiez line of cases were applicable to adults and minors alike. Thus, it could scarcely be argued that in the aftermath of these decisions, state and local legislative bodies could constitutionally reenact any such laws to pertain solely to minors.
The only decisions which I have located which have construed the substantive due process rights of minors under the “innocent acts doctrine”[9] are In re T.C., 573 So.2d 121 (Fla. 4th DCA 1991) and People v. Munoz, 9 N.Y.2d 51, 211 N.Y.S.2d 146, 172 N.E.2d 535 (1961). The holdings in both of these decisions recognize, albeit implicitly, that a minor’s substantive due process rights are coextensive with those of adults.[10] As stated *603 earlier, the court in Munoz was reviewing a statute which prohibited minors under the age of twenty-one from carrying a knife or sharp object on public property. See id., 211 N.Y.S.2d at 147-48, 172 N.E.2d at 536. The legislative findings indicated that the purpose of the statute was to prevent “youth crime and gangsterism.” Id. The highest appellate court in the state of New York, nevertheless, struck this statute as unconstitutional, but signaled that this statute may have been salvaged with a scienter requirement:
If the draftsman of this local law had included carrying the article with criminal intent, there would have been less difficulty in sustaining it as subdivision 11 of section 722 of the Penal Law, Consol. Laws, c.40, was sustained in People v. Pieri, 269 N.Y. 315, 199 N.E. 495 on the basis of performing the acts forbidden while harboring an evil intent.
Id., 211 N.Y.S.2d at 150,172 N.E.2d at 538. Ultimately, the Munoz court recognized that the only purpose of the challenged statute was to “enable [the] prosecution of those whom the police believe to be bad boys or girls,” and that did not warrant conviction of a criminal or quasi-criminal offense. See id., 211 N.Y.S.2d at 151-52, 172 N.E.2d at 539.
In the case of In re T.C., the Fourth District was confronted with a constitutional challenge to section 790.165(1), Florida Statutes, which made it a felony for any person to manufacture, possess, sell or deliver a hoax bomb or to mail or send a hoax bomb to another person. See 573 So.2d at 122. T.C., a juvenile, was arrested for violating this statute after a police officer discovered, in T.C.’s automobile, a three inch long brass pipe with one brass cap and one plastic cap. See id. The police officers testified that although the pipe was common in the construction trade, based upon their experience, they thought it might be a pipe bomb. See id. When they determined that it was not, T.C. was arrested for possession of a hoax bomb. See id.
T.C. argued on appeal, among other things, that this statute did not contain an element of intent, and thus was unconstitutional as violative of due process. The Fourth District reviewed the legislative history of this statute and determined that what the legislature had proscribed was the misrepresentation of a harmless device as a destructive device. See id. at 123. The court then reasoned that since' misrepresentation requires knowledge and intent, the statute must be construéd to necessarily include an element of intent. See id. Because the trial court had not read the statute to include an intent requirement, the case was remanded for a new trial. See id. at 124.
It is significant, however, that the Fourth District explicitly recognized in this juvenile proceeding that it was the element of intent that precluded the statute from otherwise being constitutionally infirm. Otherwise, reasoned the court, the statute would be susceptible of application to entirely innocent activities. See 573 So.2d at 123. Citing to the Saiez line of cases, the court stated that “[t]he criminalization of inherently innocent objects or activity which interferes [sic] with the legitimate personal and property rights of individuals without evidence of criminal behavior has repeatedly been condemned' as violative of due process and unconstitutional.” Id. at 124.
Unlike- the challenged statute in T.C., a scienter requirement cannot be read into sections 21-30.01(e)(2)-(3) because it affirmatively appears that it was the county’s intention for them to be strict liability offenses as a supplemental law enforcement tool where minors are concerned. As was pointed out earlier, there is already a provision in the graffiti ordinance which makes it unlawful for both adults and minors to be in possession of spray paint and jumbo markers with the intent to commit graffiti. See Metropolitan Dade County Code § 21-30.01(e)(l). It is clear to me that the challenged subsections of the ordinance, under which D.P. was charged and adjudicated delinquent, were added as “catch-all provisions” to prosecute unsupervised minors under those circumstances where the state has no direct or circumstantial evidence of the minor’s intent to make graffiti.
*604 The majority points out that it is not constitutionally impermissible to treat minors differently from adults. Majority op. at 597. While that is certainly true, it is true only in some delineated areas. Our United States Supreme Court has recognized as a general proposition, that “[a] child, merely on account of his [or her] minority, is not beyond the protection of the Constitution.” Bellotti v. Baird, 443 U.S. 622, 633, 99 S.Ct. 3035, 3043, 61 L.Ed.2d 797 (1979); see also In re Gault, 387 U.S. 1, 13, 87 S.Ct. 1428, 1436, 18 L.Ed.2d 527 (1967) (“[W]hatever may be their precise impact, neither the Fourteenth Amendment nor the Bill of Rights is for adults alone.”). For example, in criminal juvenile proceedings, juveniles are afforded the constitutional safeguards of proof beyond a reasonable doubt, notice of the charges, right to counsel, rights of confrontation and examination and the privilege against self-incrimination. See In re Winship, 397 U.S. 358, 368, 90 S.Ct. 1068, 1074-75, 25 L.Ed.2d 368 (1970). Notwithstanding these general principles, the constitutional rights of minors are still not co-equal with those of adults. The Bellotti court cited three reasons for not equating the constitutional rights of children with those of adults, namely, “the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child rearing.” 443 U.S. at 634, 99 S.Ct. at 3043. The central rationale for finding diminished constitutional rights of minors, in limited circumstances, appears to be for the personal protection of the child or the personal protection of others from the acts of minors. For example, in T.M. v. State, 689 So.2d 443 (Fla. 3d DCA 1997), we found section 790.22(9)(a), Florida Statutes, which mandates the imposition of a five day detention period on any juvenile who commits any offense involving the use or possession of a firearm, to be constitutional notwithstanding the fact that an adult who similarly commits any such offense is not subject to the same mandatory incarceration period. See id at 444, 446; § 790.22(9)(a), Fla. Stat. (1995). The statute in T.M., unlike the graffiti subsections in this case, was attempting to regulate a minor’s possession and/or use of an inherently dangerous item. See T.M., 689 So.2d at 445-46. In Metropolitan Dade County v. Pred, 665 So.2d 252, 253 (Fla. 3d DCA 1995), review denied, 676 So.2d 413 (Fla.1996), we similarly upheld the power of the county to impose a curfew for minors, for the personal well-being of minors. Likewise, the laws which prohibit minors from drinking and driving under the legal age limit are constitutionally permissible because they are for the purpose of protecting minors from inherently dangerous activities.
Thus, although the constitutional rights of minors are not co-equal with those of adults under certain circumstances, I must conclude that those factors which generally tend to support a reduction of the rights of minors are simply not present in this case. The purpose of the challenged subsections of the graffiti ordinance is wholly unrelated to the personal protection of minors or others. The county’s sole aim is to protect property from graffiti artists. While that is certainly a legitimate and laudable objective, I do not believe that it can be pursued by the county at the expense and deprivation of fundamental due process rights which both adults and minors share. Because I conclude that minors do not have diminished substantive due process rights under the “innocent acts” doctrine, the challenged subsections of this ordinance are no different than the statutes which have been repeatedly struck down by our supreme court under the “innocent acts” doctrine. For that reason, I believe that the challenged subsections of the graffiti ordinance must suffer the same fate.

. The majority correctly points out that section 21 — 30.01(e)(1) makes it a misdemeanor for adults and juveniles alike to be in possession of spray paint and jumbo markers With the intent to make graffiti. Majority op. at 594. D.P., however, was neither charged or adjudicated delinquent under this subsection.

. The irony here is that the parents of this minor will be fined for their child’s innocuous activity on their own private property and will have a lien placed against their property if they fail to satisfy the fine.

. ■ Since no fundamental right is implicated in this case, the majority’s reasoning that sections 21-30.01(e)(2) and (3) are constitutional because the county could constitutionally ban the possession of spray paint and jumbo markers respectfully misses the mark.

. Thus, within this context, the rational basis test does not simply focus "narrowly on whether a legislative body could rationally believe that the legislation could achieve a legitimate government end,” as found by the learned trial court below. See Majority op. at 597. As one court put it: "It is for the courts to determine, not how the police power should be exercised, but whether there is reasonable relation between the statute or ordinance and the object sought to be attained.” People v. Munoz, 9 N.Y.2d 51, 211 N.Y.S.2d 146, 151-52, 172 N.E.2d 535, 539 (1961).

. The majority similarly distinguishes the challenged graffiti subsections on the grounds that the prohibited items (i.e., jumbo markers and spray paint) may not be lawfully sold to minors and in the' "innocent acts” line of cases, the items could be lawfully sold but unlawfully possessed. See Majority op. at 596. X am not certain that I understand the significance of this distinction and the majority does not elucidate on the same. Nevertheless, while the sale of spray paint and markers to minors may be illegal under the ordinance, the gratuitous receipt of such items by minors from others (e.g., teacher, parent, peer, etc.) is not. The fact that the sale of such items is prohibited still does not eliminate or negate the wide range of innocent uses of such items received gratuitously.

. This law was enacted based upon legislative findings that minors in possession of such knives or instruments in public places had resulted in the commission of many crimes and contributed *601 to gangsterism and juvenile delinquency. See Munoz, 211 N.Y.S.2d at 148, 172 N.E.2d at 537. It was further deemed that unless the possession of such items by minors were banned, there was an increased danger of public violence. See id.

. Indeed, the state candidly concedes in its brief that the absence of a scienter requirement is a necessary law enforcement tool. According to the state, unless the graffiti artist is caught in the act, the ordinance is difficult to enforce.

. This does not include those cases in which the law was enacted for the protection of the minor’s welfare, i.e., curfew laws.

.LaFave and Scott discuss the innocent acts doctrine in their treatise on substantive criminal law. See supra, at § 212(c). In discussing the constitutionality of these laws, they make no distinction at all between those laws directed at all persons (i.e., in Bunis, 9 N.Y.2d 1, 210 N.Y.S.2d 505, 172 N.E.2d 273, and Birdsell, 235 La. 396, 104 So.2d 148), and those directed at minors (i.e., in Munoz, 9 N.Y.2d 51, 211 N.Y.S.2d 146, *603 172 N.E.2d 535), in terms of the quantum of the defendant’s due process rights.