OPINION OF THE COURT
Bruce M. Kaplan, J.
The wisdom of making the strictures of the “plain English” law[1] applicable to the Penal Law is graphically underscored by the way there arose this juvenile delinquency petition, which alleged that respondent Ronnie L. criminally possessed a loaded weapon.[2] The matter is one of unusual interest because it embodies a fact pattern which obviates the distinction between crimes of strict liability, and those requiring a culpable mental state.
*272 FACTS
On the morning of February 3, 1982 respondent was observed by Mr. Durmo with Gregory P., a nonstudent, on the first floor of Park West High School. Since P. was considered an intruder, both youths were taken to Mr. Jefferson’s office in accordance with school security policy. At that juncture, respondent was wearing a black leather jacket, and Gregory P. was wearing a maroon sheepskin coat.
In Mr. Jefferson’s office, confusion arose as to which boy owned which jacket. Gregory P.’s mother advised Mr. Jefferson that Gregory owned a black leather jacket, and did not own a maroon sheepskin coat. This fact was confirmed by respondent’s testimony that he and Gregory had switched jackets while on the fourth floor.
While the youths were in his office, Mr. Jefferson first patted down Gregory P., and then patted down the respondent about five minutes later. Mr. Jefferson testified that as he patted down the respondent, he felt a hard object, and asked the respondent to remove whatever it was from his coat pocket. Mr. Jefferson further testified that when he felt the hard object, and before he removed the object from respondent’s pocket, respondent said “It’s not mine, Mr. Jefferson.” The object which respondent removed from his pocket was a bolstered and loaded .22 caliber pistol. Respondent’s testimony differed in that he claimed that he did not discover that he had a gun until he was removing it from his jacket pocket and, out of surprise, said “It’s not mine, Mr. Jefferson.”
CRIMINAL POSSESSION OF A WEAPON MUST STEM FROM A VOLUNTARY ACT
Respondent claimed that the petition cannot be sustained because he was not in knowing possession of a loaded weapon.
The court cannot accept this argument since the offense is one of strict liability. However, even a strict liability offense must be the result of a voluntary act. If that fact is not established by proof beyond a reasonable doubt the petition cannot be sustained.
Section 15.10 of the Penal Law contains the definition of strict liability. It provides: “The minimal requirement for *273 criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform an act which he is physically capable of performing. If such conduct is all that is required for commission of a particular offense, or if an offense or some material element thereof does not require a culpable mental state on the part of the actor, such offense is one of ‘strict liability.’ If a culpable mental state on the part of the actor is required with respect to every material element of an offense, such offense is one of ‘mental culpability.’ ”
The concept of a voluntary act is central to. this definition. It is defined by subdivision 2 of section 15.00 of the Penal Law in the following manner: “ ‘Voluntary act’ means a bodily movement performed consciously as a result of effort or determination, and includes the possession of property if the actor was aware of his physical possession or control thereof for a sufficient period to have been able to terminate it.”
A crime of strict liability stands in contrast to one requiring a culpable mental state.
The description of the latter is set forth in subdivision 1 of section 15.15 of the Penal Law which provides: “1. When the commission of an offense defined in this chapter, or some element of an offense, requires a particular culpable mental state, such mental state is ordinarily designated in the statute defining the offense by use of the terms ‘intentionally,’ ‘knowingly,’ ‘recklessly’ or ‘criminal negligence,’ or by use of terms, such as ‘with intent to defraud’ and ‘knowing it to be false,’ describing a specific kind of intent or knowledge.”
These culpable mental states are set out in section 15.05 of the Penal Law. We need only concern ourselves with the term “intentionally” which is defined as follows: “1. ‘Intentionally.’ A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct.”
We face a conundrum when we attempt to draw a meaningful distinction between “ ‘[v]oluntary act’ ” (Penal Law, § 15.00, subd 2) and acting “ ‘[i]ntentionally’ ” (Penal Law, *274 § 15.05, subd 1) in the context of an offense whose gravamen is mere possession.
In the first instance the law speaks of a voluntary act as one “performed consciously as a result of effort or determination”. It includes possession of property if the actor was aware of his physical possession, and had hold of it sufficiently long to terminate that possession.
In the second the law speaks of acting intentionally “when [one’s] conscious objective is to cause [a] result or to engage in such conduct.”
These definitions are substantially similar, and an appropriate amendment might be considered by the Legislature since an offense requiring a culpable mental state is ordinarily designated as such in the statute defining it.
If this were done with respect to section 265.02 of the Penal Law, the petitioner would be required to prove an additional material element by proof beyond reasonable doubt.
On a strictly conceptual continuum there is no rational basis not to effectuate this change. The same volitional processes are involved in the offense of possessing a firearm, a strict liability offense, as would be implicated if the statute were one of mental culpability and required that the firearm be possessed either “intentionally” or “knowingly”.
If conduct necessarily involves a culpable mental state, is there any reason not to expressly make it a material element of the offense?[3]
The problem has implications that go beyond the instant matter. A reading of subdivision 2 of section 15.15 of the Penal Law[4] suggests that the Legislature was troubled by *275 the likelihood that situations would arise where the distinction between crimes of strict liability and those of culpable mental state would be largely illusory. Unfortunately the wording of the statute is vague, the commission staff notes and comments[5] are silent, and the practice commentaries are less than helpful.
Subdivision 2 is nowhere more enigmatic than where it states: “A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime of mental culpability.” This phrase is difficult to reconcile with the strictures of subdivision 1 which propound that the requirement of a particular mental state is ordinarily designated in the statute defining the offense by one of four terms. Since strict liability must necessarily be indicated by omitting reference to a term of mental culpability the concept of “a clearly indicated legislative intent to impose strict liability” is a somewhat elusive one.
Nonetheless the court concludes that there was a legislative intent to make subdivision (4) of section 265.02 of the Penal Law a strict liability crime. Article 265 of the Penal Law deals with firearms and other dangerous weapons. Criminal possession of a weapon in the third degree (Penal Law, § 265.02), a class D felony, prohibits possession of a loaded firearm without regard to a culpable mental state.
In contrast, criminal possession of a weapon in the second degree (Penal Law, § 265.03), a class C felony, requires that a person possess a loaded firearm with intent to use the same unlawfully against .another. It is the addition of a culpable mental state that distinguishes the two offenses, makes the latter a more serious one, and clearly establishes that the former (§ 265.02, subd [4]) was clearly intended to be a strict liability offense.
Some guidance may be gleaned from cases dealing with states of mental culpability which implicitly eschewed its use as well as one where it was deemed apposite.
In People v Green (56 NY2d 427), a case dealing with the varying forms of mental culpability, neither the majority *276 opinion, nor the vigorous dissent made reference to subdivision 2 of section 15.15 of the Penal Law, although reference to it would have strengthened the dissent, and fit logically into the majority’s analysis. This suggests that notwithstanding the subdivision’s precatory language it is not susceptible of frequent use.
Similarly when the court decided People v Cohen (52 NY2d 584) it dwelled on the strict liability aspect of subdivision (b) of section 1145 of the Tax Law (failure to file a sales and use tax return). Its failure to consider whether a subdivision 2 of section 15.15 imputation of willfulness would be appropriate sufficiently piqued Judge Gabrielli that he concurred in result only.
In contrast, People v Chesler (50 NY2d 203) applied the statute to impute a requirement of a culpable mental state where the defendant was charged under the Lien Law.
It did so in the context of a section whose violation was explicitly equated with the commission of a larceny. Since larceny is an offense of mental culpability it was logical for the court to invoke subdivision 2, and make mental culpability an element of section 79-a of the Lien Law.
In similar situations other courts have considered what degree of volition a defendant must exhibit before he can be convicted of a crime. In People v Cohen (57 AD2d 790), the Appellate Division held it error to fail to charge the jury that it had to find the defendant in knowing possession of a loaded firearm in order to convict him of violating subdivision (4) of section 265.02 of the Penal Law. The court did not state that there was a culpable mental state requirement pursuant to subdivision 2 of section 15.15 of the Penal Law. Rather it held that it was necessary to show that possession was a voluntary act.
This point was discussed in People v Davis (112 Misc 2d 138). The court, in ruling that section 265.01 of the Penal Law was a crime of strict liability, stated (p 141) “[t]he doing of an act such as possessing a weapon may by statute * * * be made criminal per se without regard to the doer’s intent or knowledge, but nevertheless the act of possessing must not be involuntary as an involuntary action is not criminal. These two concepts are not the same. They are not mutually exclusive”.
*277 This court must respectfully disagree with People v Davis (supra). The discussion earlier in this opinion demonstrated that the concepts of acting voluntarily, and acting intentionally, in the context of this proceeding are virtually identical.
RESPONDENT VOLUNTARILY POSSESSED A LOADED FIREARM
The court credits Mr. Jefferson’s testimony, and concludes that respondent was aware that he possessed the gun before he started to remove it from his pocket. Respondent was wearing the coat in which the gun was found from the time he and P. exchanged coats on the fourth floor until it was removed approximately five minutes after they entered Mr. Jefferson’s first floor office. Furthermore, respondent’s statement to the effect that the gun was not his hardly qualifies as an exclamation of surprise. There was no testimony that it was accompanied by any manifestation of speech or behavior commonly associated with surprise, such as a sudden intake of breath, modulation of voice, or involuntary physical movement.
The court finds incredible respondent’s seeming assertion that he was not aware that there was any sort of object in his pocket.
The bolstered revolver is both bulky and weighty. Respondent had navigated four flights of stairs with the gun in the side pocket of a waist-length jacket. It is inconceivable that he would not feel it bumping against him as he descended the staircase, and not investigate what was in his pocket.
Respondent’s counsel emphasized the alleged discrepancy in size between respondent and Gregory P. The record supports his position but minimally.
Mr. Jefferson was never questioned on how the sheepskin jacket fit P., a point worth exploring on cross to lend credence to the alleged loose fit of P.’s jacket on respondent.
Indeed, respondent equivocated about how his coat fit P., and testified that P. was perhaps two inches taller and 10 pounds heavier.
Of course, it would have been singularly useful to have had P. present in court. While he could not be compelled to *278 testify, he could have been marked as an exhibit. (People v Diaz, 111 Misc 2d 1083.)
Officer Sugarman later testified that the gun which was confiscated from respondent had been loaded at the time it was in his possession. The court credits his testimony that there were nine rounds in an operable firearm, satisfying the final element of criminal possession of a weapon in the third degree.
Probation is ordered to conduct an investigation, prepare a report and be prepared to recommend an appropriate disposition at Part V of the New York County Family Court on June 28, 1983.

. General Obligations Law, § 5-702.

. Penal Law, § 265.02, subd (4).

. The answer is yes, when the specification of a culpable mental state is the only way that section 265.03 of the Penal Law, a felony one degree higher, differs from section 265.02 of the Penal Law. While this provides a rational basis to make the former a more serious crime than the latter, it leaves unresolved the conceptual problem raised by failing to engraft a mental culpability element onto section 265.02 of the Penal Law.

. Subdivision 2 of section 15.15 of the Penal Law provides: “2. Although no culpable mental state is expressly designated in a statute defining an offense, a culpable mental state may nevertheless be required for the commission of such offenSe, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such culpable mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime of mental culpability. This subdivision applies to offenses defined both in and outside this chapter.”

. Note comments of the staff of the State Commission on Revision of the Penal Law and Criminal Code (1964-1965).