THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VAN LEGETT, Also Known as VAN LEGGETT, Appellant.

First Department, August 18, 1988

1

### APPEARANCES OF COUNSEL

*Jonathan R. Walsh* of counsel *(Susan L. Valle* with him on the brief; *Paul T. Gentile, District Attorney,* attorney), for respondent.

*Faith E. O'Neal* for appellant.

### OPINION OF THE COURT

WALLACH, J.

Because the trial court's charge failed to clarify the one serious issue in the case, that is, whether defendant's possession of a derringer pistol was, or was not, temporary and innocent, we reverse and remand for a new trial.

Taking the stand in his own behalf, defendant testified to the following as summarized by the court in its main charge. "Now comes the defense in this case. Defendant has told us and again, this is my recollection, you're not bound by my recollection—that he was in the social club for several hours, two hours, two and-a-half hours—if I remember he was watching two young ladies playing pool, at least one lady was scantily clad, and he was interested in watching, he continued to watch, I don't know what happened, I don't know what someone said, but he said someone threatened him and had something in his hand and he, being bigger than the fellow who was threatening him, grabbed this thing out of his hand and he walked out because he was asked to leave by the

chairman of the board, or president of the social club and he walked out, he wasn't quite sure what he had in his hands and he saw the police car arriving and he walked over to the officer and handed him what turned out to be the gun which is now in evidence. This is to justify why he had the gun in his hand, the result of an altercation at this social club."

Immediately following this the court stated the issue for the jury as follows: "Well, if you are convinced, if you believe that this was not his gun, that he only literally *[sic]* because he took it away from somebody else, and by way of justification as to why he had it in his hands, *if you accept that testimony, then of course you may have a reasonable doubt as to the charges.* But then you go back now to the testimony of the two police officers. What was said when he handed the gun to the police officer? Both at the scene and the police station." (Emphasis added.)

This instruction could only have misled the jury. A crediting of this testimony would not merely raise a reasonable doubt as to defendant's guilt of the two gun possession charges; rather it could establish the complete defense of temporary innocent possession. Yet at no point did the Trial Judge even mention this concept, or attempt to furnish a definition of it.

Following the main charge and a conference with counsel where both sides requested a further instruction on the issue, the court advised the jury thus:

"The other question which has been brought to my attention which I probably should have elucidated a little more was justification. The defendant told you how he obtained possession of this gun, he took it away from someone who was threatening him.

"Well, the People have the burden of disproving this justification beyond a reasonable doubt. Again, you must consider the totality of the evidence in this case, whether or not you are convinced beyond a reasonable doubt of each separate charge brought against this defendant."

While addressing the burden of proof, this supplemental instruction did nothing to elucidate the proposition that the defendant had proffered what could amount to a complete defense. In *People v Williams* (50 NY2d 1043, 1046), Judge Fuchsberg, in dissent, observed with respect to this defense in a weapon possession prosecution: "The two threads running through each of the cases holding the defense available are

the inadvertence of defendant's original acquisition of the item and the brevity of his exercise of control over it."

Here, defendant testified that he grabbed a plastic bag away from an individual nicknamed "Skull" in the confines of a social club from which he was, shortly thereafter, ejected. He remained outside a mere 10 minutes before the police arrived, whereupon, as fully corroborated by the testimony of the police officers, he immediately surrendered possession of the gun to them by holding it out at arm's length between thumb and forefinger. As we held in *People v Pendergraft* (50 AD2d 531, 532), "Under settled law a conviction for possession of a weapon may not stand if the possession was incidental to a lawful act such as disarming a wrongful possessor *(People v Persce,* 204 NY 397, 402) or in self defense (see *People v Steele,* 26 NY2d 526)."

Defendant's testimony presented evidence of (1) disarming an aggressor of an opaque plastic package, with which defendant was threatened, and (2) surrender of the contents consisting of a gun ·to the police almost immediately upon his discovery thereof. Thus, his testimony put defendant "within the compass of the innocent possession defense" *(People v Williams, supra,* at 1046). Here, the jury was given no guidelines for its proper application. And, even though this error was not fully preserved for appellate review, it affected the fairness of the entire trial, and we therefore take note of it in the interest of justice *(see, People v Pendergraft, supra).*

Accordingly, the judgment, Supreme Court, Bronx County (Joseph DiFede, J.), rendered December 16, 1981, convicting defendant, after a jury trial, of two counts of criminal possession of a weapon in the third degree (Penal Law § 265.02 [3], [4]), and sentencing him to an indeterminate term of imprisonment of from 1 to 3 years, should be reversed, on the law and in the interest of justice, and a new trial ordered.

ASCH, J. (dissenting). This court reverses defendant's conviction "in the interest of justice" because the trial court did not give a charge on innocent possession of the firearm *(see,* 1 CJI [NY] 9.65, at 535). Certainly, as the majority must concede, the defendant did not request such a charge and thus has waived appellate review as a matter of law (CPL 470.05 [2]; *People v Ford,* 62 NY2d 275).

This was a trial in which the testimony took no more than two hours. The issues were presented in a straightforward manner to the jury. It may well be that the Judge's instruc-

tions did not have the pristine clarity and nicety of Lord Chesterfield's letters to his son. Nevertheless, the trial court in its charge communicated to the jury, in this simple case, the contention of the defendant that he had the gun as a result of an altercation in the social club with another and that he had taken the gun away from that person. The court further instructed the jury that if it accepted this version of the facts, this might constitute reasonable doubt as to the defendant's guilt. Obviously, the defendant was satisfied with the court's charge since he did not request an innocent possession charge and also failed to object to the charge as given.

Perhaps most significantly, the facts presented at trial were *not* compatible with any claim of innocent possession. "While it would be unwise to detail here those instances in which an innocent possession charge might be warranted, it suffices to note that the underlying purpose of the charge is to foster a civic duty on the part of citizens to surrender dangerous weapons to the police *(People v La Pella, supra)*. Thus, to trigger the right, there must be proof in the record showing a legal excuse for having the weapon in his possession as well as facts tending to establish that, once possession has been obtained, the weapon had not been used in a dangerous manner" *(People v Williams,* 50 NY2d 1043, 1045).

As the Court of Appeals noted in *Williams (supra),* the defendant there, upon discovering a gun, removed it and secreted it in a new hiding place, thereafter removing it and handling it in a reckless manner. The court there found there was no obligation on the part of the trial court to grant an innocent possession charge in those circumstances.

In the instant case, the evidence was likewise "utterly at odds with any claim of innocent possession" *(supra,* at 1045). Defendant never testified that he had not intended to keep the gun. In fact, he testified he might have had the gun in his possession outside the social club for up to three hours before the police arrived. Reinforcing this lack of any defense of temporary possession was the police officers' testimony that a shot was fired and that defendant admitted being in a fight in the club and firing a shot in the air. Thus, defendant failed "to trigger the right" to any jury charge of innocent possession, even if requested, since there was no "proof in the record showing a legal excuse for having the weapon in his possession as well as facts tending to establish that, once possession [was] obtained, the weapon had not been used in a dangerous manner" *(People v Williams, supra,* at 1045).

SANDLER, J. P., and ROSENBERGER, J., concur with WALLACH, J.; ASCH and KASSAL, JJ., dissent in an opinion by ASCH, J.

Judgment, Supreme Court, Bronx County, rendered on December 16, 1981, reversed, on the law and in the interest of justice, and a new trial ordered.