■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EARL BANKS, Appellant.—Judgment, Supreme Court, New York County (James Leff, J.), rendered June 27, 1985, convicting defendant, after a jury trial, of criminal possession of a weapon in the third degree and sentencing him to an indeterminate term of 3 to 6 years, reversed, on the law and the facts, the judgment vacated and the case remanded for a new trial.

The conviction should be reversed since the trial court erred in denying a request by defendant's counsel for a charge on the defense of "temporary and lawful" possession. Defendant has been on parole since June 1988.

The People's case was as follows. At approximately 8:20 P.M. on October 25, 1984, the complainant, Freddie Benes, a convicted marihuana dealer, was approached from behind by Earl Banks and codefendant Carson Love in Saint Catherine's Park on East 68th Street in Manhattan. Banks and Love pinned Benes to a park bench, punched him in his face, pressed a gun to his ribs, and stole $100 in bills, a wallet and five bags of marihuana from his pockets, and a wristwatch. Benes followed Banks and Love as they left the park and watched as they boarded an eastbound bus. Benes then hailed a police car and Love and Banks were apprehended shortly thereafter. A .38 caliber automatic pistol was discovered in a paper bag in Banks' pants pocket. Six bags of marihuana and Benes' watch were also found on Banks. Neither the wallet nor $100 was recovered. Banks told police that the watch and gun did not belong to him.

When called by the People, three teen-age girls who were

friends of Benes testified that they had been present in the park during the incident. Two of the girls claimed to have seen one of the defendants hold what appeared to be a gun against Benes' side. One of the girls identified the defendants both at the time of their arrest and at trial.

Michael Mapp, another convicted marihuana dealer, was called as a witness by codefendant Love. Mapp testified that he observed Love and Banks approach Benes in the park and saw Banks snatch Benes "stash"—a brown paper bag containing marihuana—from Benes' hand. Banks and Love then left the park followed by Benes. He did not see a gun nor did he see the three young women in the park during these events.

Banks, testifying on his own behalf, indicated that he had been asked by Love to hold six packages of marihuana which Love intended to exchange in Saint Catherine's Park. Once inside the park he saw Love punch Benes in the face and the two men began to fight. Banks testified that after "somebody yelled out he is going to get something", he grabbed Benes' arm and seized a paper bag from the ground before Benes could pick it up. He felt the shape of a gun in the bag and placed the bag in his pants pocket with the intention of throwing it down a sewer when he returned home to Queens. He testified that he did not immediately throw the gun away since there were too many people around and he did not wish to jeopardize his safety. Banks further testified that at the time of his arrest, he was listening to music through the headphones of a Walkman and, therefore, did not hear the police officer call out to him to stop.

On rebuttal, police witnesses testified that latent fingerprints from the pistol did not match those of the defendant, Love, Benes or the arresting officers.

The trial court refused a request by Banks' attorney for a charge on "transitory possession", stating "[t]he defendant indicated he intended to take the gun to Queens and throw it down the sewer, that's hardly a transitory possession as I understand it."

During its deliberations, the jury submitted a note which read in part: "[i]s it possible by the definition of the law of possession of a weapon to find Banks not guilty of the charge, if we believe the evidence shows that the gun was in his possession?" In reply, the court merely reread the definition of criminal possession of a weapon in the third degree. Included in the same note, the jury also asked whether "self defense was reason to find him [the defendant] not guilty of posses-

sion." In response the court correctly instructed the jury that the defense of justification was not applicable to possession of a weapon. *(People v Pons,* 68 NY2d 264, 265-266 [1986]; *People v Almodovar,* 62 NY2d 126, 130-131 [1984].) Thereafter, a second request by Banks' counsel for a charge on temporary or transitory possession was denied.

" 'Under settled law a conviction for possession of a weapon may not stand if the possession was incidental to a lawful act such as disarming a wrongful possessor *(People v Persce,* 204 NY 397, 402) or in self defense (see *People v Steele,* 26 NY2d 526).' " *(People v Legett,* 140 AD2d 1, 4 [1st Dept 1988], quoting *People v Pendergraft,* 50 AD2d 531, 532.) Here, Banks testified that he obtained the weapon in the course of the fight and thus a reasonable view of the evidence, in a light most favorable to the defendant, is that his initial possession of the weapon was not unlawful.

The defendant was arrested shortly after the incident and never eschewed an opportunity to turn the weapon over to the police. *(See, contra, People v Snyder,* 73 NY2d 900 [1989], *affg* 138 AD2d 115 [3d Dept 1988].) Nonetheless, while the underlying purpose of the defense of lawful and temporary possession is "to foster a civic duty on the part of citizens to surrender dangerous weapons to the police" *(People v Williams,* 50 NY2d 1043, 1045 [1980]), an intent to surrender the weapon to the police is not an essential element of this defense. *(People v Williams, supra,* at 1047 [dissent by Fuchsberg, J.]; *People v Snyder,* 138 AD2d, *supra,* at 118, *affd* 73 NY2d 900, *supra; People v Whitehead,* 123 AD2d 895, 896 [2d Dept 1986].)

The defendant's testimony that he intended to take the gun back to Queens and dispose of it, if credited, does not reflect an intent to exercise such dominion and control over the weapon as to foreclose this defense. Thus, whether the defendant's possession of the gun was both innocent and temporary were factual issues for the jury's determination. Concur—Carro, Rosenberger, Ellerin and Smith, JJ.

Kupferman, J. P., dissents in a memorandum as follows: The court's opinion fairly states the facts.

If one credits the testimony of the defendant, the altercation took place in Saint Catherine's Park, in Manhattan, a known narcotics area on East 68th Street, and he seized a gun belonging to the complainant. He claims that a charge on "transitory possession" was in order because all he expected to do with the gun was to take it to Queens and throw it down a sewer. One may take judicial notice of the fact that the

sewer system extends to Manhattan, where the defendant supposedly obtained possession of the gun. The explanation is absurd on its face, and there was no basis, as the trial court stated, to charge transitory possession.