OPINION OF THE COURT
Laura Safer-Espinoza, J.
The court is in receipt of a posttrial Clayton motion on behalf of this defendant and has made a determination upon the merits of that motion. In reviewing the papers submitted by both sides, however, it became clear that arguments were made that went directly to the issue of legal sufficiency of the evidence in the case.
Therefore, as both counsel have previously been informed, in addition to the Clayton motion, the court will address the legal arguments made as to the sufficiency of the trial evidence, in the form of a decision on a motion to set aside the verdict under CPL 330.30 (1).
The facts as testified to in this case were fairly simple, and not fundamentally in dispute. On December 11, 1990, a demonstration was being held in front of 100 Centre Street. The 10 to 15 demonstrators present held banners that read "stop aids”. These demonstrators, as well as other individuals, had gathered used hypodermic syringes from public areas on the lower east side of New York City — streets, playgrounds and schoolyards were among the locations mentioned.
The undisputed objectives of this demonstration were to *622 focus publicity on the spread of AIDS through infected hypodermic instruments, and to turn over the syringes previously collected, after attracting as much press coverage as possible.
It was also undisputed that Mr. Cezar’s presence at the demonstration was requested by its participants. He was asked to be the individual who held up the box of contaminated syringes before the press, prior to its being turned over. This request was apparently made as a result of Mr. Cezar’s having attracted a substantial amount of media attention in the past.
The People contended, and Mr. Cezar admitted, that upon his arrival at 100 Centre Street, he was handed and took possession of a box containing numerous dirty hypodermic syringes.
The defendant acknowledged holding this box that was opened so that the members of the press could view it, for approximately two to three minutes, and stating to the press as they took pictures, that this was what the demonstrators would be turning over.
Defendant and another witness testified that he then attempted to turn the box with its contents over to the police officers present at the scene, who declined to accept it. Mr. Cezar was then placed under arrest. Testimony by the People’s witness was clear that Mr. Cezar did not resist arrest, that he discussed his motivations with the arresting officer, and warned him to be careful in handling the box.
CPL 170.40 states that an information may be dismissed in the interest of justice, when, even though there may be no basis for dismissal as a matter of law, dismissal is required as a matter of judicial discretion by the existence of some compelling factor, clearly demonstrating that conviction or prosecution of the defendant would constitute or result in injustice. Our courts have held that this is a remedy to be applied sparingly, in unusual cases that call for fundamental justice beyond the confines of conventional considerations.
The statute mandates consideration of several criteria (CPL 170.40 [1] [a]-[j]). Those relevant to this case have been grouped for the court’s consideration.
The first criteria considered by the court were: the seriousness and circumstances of the offense; the extent of harm caused by the offense; and the impact of a dismissal on the safety or welfare of the community.
The court agrees that in the usual circumstance, possession *623 of hypodermic instruments can have serious implications for the possessor, and at times for those around him or her as well.
In this case, however, the possession of hypodermic syringes that were gathered for the express purpose of turning them in to the authorities, where there is no allegation of dangerous use, and where on the contrary, defendant appeared to have handled the box carefully for a very brief time, and instructed even the arresting officers to be cautious as well, cannot be viewed as constituting a serious offense. Defendant was not even charged with disorderly conduct. Apparently, he blocked no one’s entrance or exit from the building, and certainly did not resist arrest.
While it would clearly have been ideal, as the People contend, for these syringes to have been removed by the Departments of Health and Sanitation (two agencies which the court notes are beset with budget cutbacks and requests to scale back their normal operations), this court cannot in good conscience disregard the realities of our streets. It is contrary to common sense to claim that the danger to our community will be increased by those who seek to hand in dangerous contraband to the authorities, and to publicize its detrimental aspects. In passing, the court notes that it was never alleged that Mr. Cezar participated in gathering the hypodermic instruments introduced into evidence.
The next factors considered by the court were the history and character of the defendant and the purpose and effect of imposing sentence.
The court is well aware of defendant’s long history of criminal convictions, principally for the sale of marihuana. Such a record would and should normally disqualify any defendant from obtaining a dismissal in the interest of justice. Mr. Cezar’s advocacy of marihuana use, and the illegal sales of marihuana for which he has and will be punished by the criminal justice system, if found guilty in the future, are in no way the subjects of this case. His background has, however, been given serious consideration by the court in the determination of this motion.
In spite of Mr. Cezar’s previous convictions, in the opinion of this court, the purposes usually served by sentencing, that is, deterrence, rehabilitation and/or punishment would make little or no sense in the context of this case. Whether defendant’s motives were self-aggrandizing or not, he was assisting *624 in the turning over of contaminated syringes, and in focusing public attention, at least for the time it takes to read a news item, on the fact that thousands of lives are being needlessly lost to AIDS through shared, contaminated needles. In the opinion of this court, defendant’s actions compare favorably with the usual sentences of street or park cleaning imposed as community service by the courts.
The next relevant factor considered by the court is the evidence of guilt in this case. As stated earlier, the basic facts of this case were not in dispute. What was at issue here was the question of whether Mr. Cezar’s possession of the hypodermic instruments was recognized by the law as temporary, lawful possession.
Since this part of the motion will also be determinative of the motion to set aside the verdict, the legal standards applicable to such a motion have been applied. The power granted a Trial Judge by CPL 330.30 (1) to set aside a verdict when reversal as a matter of law by an appellate court would be required is, as concerns proof of guilt, normally limited to a determination that the trial evidence was not legally sufficient to establish the defendant’s guilt of an offense of which he was convicted (People v Carter, 63 NY2d 530 [1984]). Legally sufficient evidence means competent evidence which, if accepted as true, would establish every element of an offense charged and defendant’s commission thereof. Neither the possibility of innocence nor the fact that a verdict is against the weight of the evidence based upon a reassessment of facts is a sufficient ground (People v Colon, 65 NY2d 888 [1985]; People v Goodfriend, 64 NY2d 695 [1984]).
In reaching its decision, this court has considered only those facts which were undisputed at trial and has engaged in no independent weighing of the evidence.
Although the facts herein present a case of first impression, it is well settled that the mere possession of contraband is not criminal in every instance. To trigger the right to a charge of temporary and lawful possession, there must be proof in the record showing a legal excuse for having the contraband, as well as facts tending to establish that once possession has been obtained, the contraband has not been used in a dangerous manner (People v Williams, 50 NY2d 1043 [1980]; People v Banks, 76 NY2d 799 [1990]).
The Court of Appeals has stated that while it would be unwise to detail all those instances in which a finding of *625 innocent possession would be warranted, it must be kept in mind that the underlying purpose of the defense is to foster a civic duty on the part of citizens to surrender dangerous contraband to the police (People v Williams, supra, at 1045; People v La Pella, 272 NY 81 [1936]).
Examples of temporary lawful possession given in the Pattern Jury Instructions include those of individuals who find contraband or who take it away from unlawful users or possessors. Rather than prerequisites, however, these circumstances of obtaining possession are viewed by the courts as indicia that defendants did not intend to unlawfully retain the contraband.
Factors that courts have considered in their determinations include: the length of time contraband remained in an individual’s possession, the opportunity he had to dispose of the contraband in a lawful manner, whether any efforts were made to turn the contraband over to lawful authorities, as well as whether any dangerous or unlawful use was made of the contraband by the individual asserting the defense (People v Legett, 140 AD2d 1 [1988]; People v Bonterre, 169 AD2d 481 [1991]).
The courts have also held that an intent to surrender the contraband is not always necessary to establish the defense (People v Whitehead, 123 AD2d 895 [1989]). Once an individual has a clear opportunity to turn the contraband over to lawful authorities and does not do so, however, retention can only be justified by an affirmative showing of intent to properly dispose of the contraband, and circumstances justifying failure to do so promptly. (People v Snyder, 138 AD2d 115, 119.)
It is acknowledged that the defendant in this case went to 100 Centre Street for the explicit purposes of holding up a box of syringes that had been gathered by others, showing it to the press and then having it turned over to lawful authorities. The testimony at trial from both prosecution and defense witnesses concerning defendant’s actions and statements were entirely in line with those purposes. Defense witnesses gave uncontradicted testimony that, as Mr. Cezar held the box, he told members of the press that these were the needles that would be turned in. They also testified that after showing the box to the press, Mr. Cezar attempted to turn it over to the police who were present. The officers declined to accept the box and defendant was arrested.
Even assuming that the jury disbelieved the uncontradicted *626 testimony regarding Mr. Cezar’s statements and his immediate attempts to turn over the box, since the acknowledged purpose of the demonstration was to turn those hypodermic instruments over to the authorities, this case is clearly distinguishable from those in which defendants kept dangerous contraband (commonly a weapon) for long periods of time, or carried it through the streets and subways with the stated intention to dispose of it by throwing it down a sewer (People v Snyder, 138 AD2d 115, supra; People v Bonterre, 169 AD2d 481, supra; People v Banks, 76 NY2d 799, supra).
Nor, as mentioned earlier, was there any allegation that once Mr. Cezar came into possession of the hypodermic instruments he used them in a dangerous manner. This factor also distinguishes the instant case from those where the courts have found defendant’s actions in handling contraband to be irresponsible and reckless (People v Williams, supra, at 1045; People v Bonterre, supra, at 481).
This court has searched in vain for precedents in this State regarding situations where those assisting individuals who have come into possession of contraband to turn it over to lawful authorities have been charged with unlawful possession of that contraband. Almost certainly, the lack of such authority is a result of the recognition that to arrest such individuals would be counter to the underlying purpose of the temporary lawful possession defense — to foster a civic duty to surrender contraband. In fact, both counsel have mentioned similar cases involving hypodermic instruments, whose distinguishing features are not entirely clear to this court, since delivery of the contraband was apparently completed at the time of arrest, and which were not prosecuted.
The factor which may have distinguished Mr. Cezar’s case from other cases in which individuals have knowingly acted to assist in the turning over of contraband, is that normally, the temporary and lawful possessor does not seek a press conference on their way to the precinct. The court feels reasonably certain that the People’s contentions that Mr. Cezar’s desires to obtain publicity for himself were a major motivation for his participation in the events of December 11, 1990, have some merit.
The fact that he sought and received press, however, is a legally unacceptable distinction. Penalization of any individual for exercising their First Amendment rights to be heard on any issues, let alone the critical ones surrounding drug use *627 and the spread of AIDS through infected needles, cannot be condoned by the courts.
Pursuant to the foregoing discussion, it is the opinion of this court that the trial evidence was not legally sufficient to establish the offense of which the defendant was convicted, and that the defense of temporary lawful possession was established as a matter of law. Therefore, defendant’s motion to set aside the verdict is granted pursuant to CPL 330.30 (1).
Returning to the Clayton motion, there is one remaining factor for the court’s consideration — the impact of dismissal upon the confidence of the public in the criminal justice system. The court agrees that jury verdicts should only be disturbed for strong legal reasons. As discussed above, in the opinion of this court, those reasons exist in this case. The court also agrees with the People that the problems perceived by the demonstrators in this case — the failure of the war on narcotics addiction and the spread of AIDS through infected syringes — require political solutions from our elected officials. It does not follow, however, that public confidence in the criminal justice system is bolstered by the use of scarce resources (including court time and the assignment of a very capable Assistant District Attorney) in trials of cases such as this. Furthermore, should this case be perceived as a penalization of the exercise of First Amendment rights, public confidence will be damaged far more than by dismissal.
The court has stated that a defendant with Mr. Cezar’s criminal background would normally not be considered for the relief requested in a Clayton motion. Under these circumstances, however, where a motion to set aside the verdict is granted, the overriding factor becomes the lack of evidence of defendant’s guilt.
Therefore, defendant’s motion pursuant to CPL 170.40 is also granted.
Pursuant to the foregoing opinion, the information in this case is dismissed.