*674 OPINION OF THE COURT
Harold J. Rothwax, J.
The defendant broke into a car and stole the contents. He was apprehended as he emerged from the car. Among the items in the defendant’s possession was an electronic stun gun. It was described by a witness in the Grand Jury as a black rectangular object having two prongs on one end. The defendant testified before the Grand Jury and admitted breaking into the car and stealing property. He testified further that he had taken the stun gun from the car without knowing what it was. He testified that he believed the black object to be a radar detector.
The defendant was indicted for criminal possession of a weapon in the third degree (Penal Law § 265.02 [1]), based upon his possession of the electronic stun gun, one of the "per se” weapons proscribed by Penal Law § 265.01 (l).[1] Electronic stun guns were added to the list of per se weapons in 1990 (L 1990, ch 264). The statute defines an electronic stun gun as "any device designed primarily as a weapon, the purpose of which is to stun, cause mental disorientation, knock out or paralyze a person by passing a high voltage electrical shock to such person.” (Penal Law § 265.00 [15-c].)
In his charge on the law of criminal possession of a weapon, the Assistant District Attorney instructed the Grand Jury that it was not necessary for the jurors to find that the defendant knew he possessed a stun gun; they need only find that the defendant was aware of possessing an object which was in fact a stun gun. The defendant contends that to hold him strictly liable for possession of an object without requiring proof that he knew the object was a weapon, violates basic principles of due process of law. The issue presented is whether the Assistant District Attorney’s legal instruction was correct as a matter of statutory interpretation and, if it were correct, whether the statute so interpreted would offend constitutional principles.
The Assistant District Attorney’s charge is supported by the commonplace statement in opinions construing Penal Law §§ 265.01 and 265.02, that criminal possession of a weapon is a strict liability crime requiring no particular mental culpability. (See, e.g., People v Messado, 49 AD2d 560 [1st Dept 1975]; *675 People v Ansare, 96 AD2d 96 [4th Dept 1983]; People v Newton, 72 Misc 2d 646, 647 [Sup Ct, Queens County 1973]; People v Davis, 112 Misc 2d 138, 140 [Crim Ct, Bronx County 1981]; Matter of Ronnie L., 121 Misc 2d 271, 273 [Fam Ct, NY County 1983]; see, People v Velasquez, 139 Misc 2d 822, 824-825 [Sup Ct, NY County 1988].)
In spite of the lack of equivocation in this assertion, a close reading of these cases reveals qualifications upon strict liability for weapons possession. First, these cases invariably involve possession of a firearm. Second, the Penal Law requires proof, even as to strict liability crimes, of a "voluntary act” which includes in regard to possessory crimes, proof of an awareness of "physical possession or control thereof for a sufficient period to have been able to terminate it.” (Penal Law § 15.00 [2].) This statute has been interpreted by appellate courts as imposing a requirement of proof of "knowing” possession. (People v Ford, 66 NY2d 428, 440 [1985]; People v Cohen, 57 AD2d 790, 791 [1st Dept 1977].) In Cohen, the trial court charged the jury that the defendant could be convicted of possessing a firearm found in his car "by mere possession”, and that the defendant does not "have to have any knowledge that he is carrying the firearm to violate the statute.” The Appellate Division reversed the defendant’s conviction, in reliance upon Penal Law § 15.00 (2).[2]
Read literally, Penal Law § 15.00 (2) requires only an awareness that the proscribed object was on the defendant’s person or otherwise under the defendant’s dominion and control. (See, People v Velasquez, supra, 139 Misc 2d, at 823.) However, because guns are all too familiar objects in our society, where the object is a firearm, an awareness of possessing it logically gives rise to an inference of knowledge of the nature of the object possessed. (People v Lynch, 116 AD2d 56, 61 [1st Dept 1986]; Commonwealth v Bacon, 374 Mass 358, 361, 372 NE2d 780 [1978].) No reported decision under article 265 of the Penal Law has held anyone liable for criminal possession of a firearm[3] where the accused successfully disclaimed knowledge of the essential character of the thing possessed. In one case *676 where the defendant apparently claimed to be unaware of the nature of the object in the pocket of a jacket he obtained from another person, the court disbelieved the defendant. (Matter of Ronnie L., supra, 121 Misc 2d, at 277.) Applying the "voluntary act” requirement, the court found that the defendant "was aware that he possessed the gun.” (Supra.) Other courts have relied upon the voluntary act requirement to permit the jury to consider the defendant’s intoxication (People v Carlo, 46 AD2d 764 [1st Dept 1974] [involuntary intoxication]; People v Trisvan, 49 AD2d 913 [2d Dept 1975] [voluntary intoxication]; People v Valentine, 54 AD2d 568 [2d Dept 1976], supra) as a defense to criminal possession of a firearm. (See, People v Davis, 112 Misc 2d 138, supra.)
In cases involving the possession of a gun, our courts exonerate defendants whose possession was foisted upon them by circumstances beyond their control. For example, a defendant who knowingly possessed a firearm while aboard a plane which made an unscheduled stop within the United States was held to be nonculpable under the voluntary act requirement. (People v Newton, 72 Misc 2d 646 [Sup Ct, Queens County 1973].) In another case, a defendant who testified he did not know that a bag he took away from an assailant contained a gun until after he came into possession of the bag, was entitled to a jury instruction on the defense of temporary, innocent possession. (People v Legett, 140 AD2d 1 [1st Dept 1988].) The Court of Appeals has noted in discussing the defense of temporary innocent possession of a weapon, "that possession — an essential element of criminal possession of a weapon — does not turn upon physical handling of the prohibited weapon alone”, but permits a defense of legal excuse for having a weapon in one’s possession. (People v Williams, 50 NY2d 1043, 1045 [1980]; see, People v Messado, 49 AD2d 560, supra.)[4]
This review demonstrates that our courts, in effect, do read a mens rea requirement into the possession of weapon statutes, although noting that the statutes do not expressly require proof of any particular mental culpability. This result is consistent with the rule of statutory construction set forth in the Penal Law (Penal Law § 15.15 [2]) disfavoring strict liability. The rule states that "[although no culpable mental state *677 is expressly designated in a statute defining an offense, a culpable mental state may nevertheless be required for the commission of such offense, or with respect to some or all of the material elements thereof, if the prescribed conduct necessarily involves such culpable mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime of mental culpability.” (Penal Law § 15.15 [2].)
In order to determine whether the Legislature clearly indicated an intent to impose strict liability for possession of the weapons designated in section 265.01 (1) of the Penal Law, it is necessary to examine the origin of the section. As explained in People v Persce (204 NY 397 [1912]), prior to 1905 possession of the weapons specified by the predecessor statute (Penal Code § 410) to section 265.01 was criminal only when accompanied by an attempt or an intent to use them against another. (People v Persce, 204 NY, at 401.) In 1905 the section was changed to make possession of the designated weapons[5] a crime without evidence of an intent to use. In upholding the constitutional power of the Legislature to eliminate the element of intent to use these weapons, the Court of Appeals made two important observations. First, the Court noted that "the possession which is meant is a knowing and voluntary one”, and would exempt possession "which might result temporarily and incidentally from the performance of some lawful act, [such] as disarming a wrongful possessor.” Second, the Court held that the statute thus limited came within the police power because "the well-understood, character of [the designated weapons] make[s] it evident that the legislature were entirely justified in regarding them as dangerous and foul weapons seldom used for justifiable purposes”. (Supra, at 402 [emphasis added].)
Persce (supra), while accepting the power of the Legislature to prohibit simple possession of dangerous instruments, conditioned that acceptance upon proof that the possession was both "knowing and voluntary” (at 402). Therefore, the Court noted, the innocent acquisition of such a weapon would negate the requirement that possession be voluntary. Although the Court did not elaborate upon the degree of knowledge required for culpability, it was the "well-understood” character of the object which made its possession culpable, without *678 "delaying until opportunity had bred” to use the object unlawfully. (People v Persce, 204 NY, at 403.)
This statute was reenacted in section 1897 of the former Penal Law. The list of per se weapons[6] had been expanded. Construing this statute, the First Department held that to base a conviction upon mere possession, the thing possessed must meet the commonly accepted definition of one of the prohibited weapons, and not be merely similar in character. (People v Visarities, 220 App Div 657, 658-659 [1st Dept 1927].) "Mere possession of the prohibited instrument, known and voluntary, constitutes the offense. (People v. Persce, 204 N. Y. 397.) The reason for this is based upon the dangerous character of the weapons.” (Supra, at 658.)
This strict construction was compelled by the basis for the legislative exercise of the police power. Where an attempt was made to punish the mere possession of objects that are not inherently dangerous, the Court of Appeals held that such an expansion of liability exceeds the Legislature’s powers. (People v Munoz, 9 NY2d 51 [1961].) Munoz held that a local ordinance making it unlawful for persons under the age of 21 to possess in a public place any sharp pointed or edged instrument which could be used for cutting or puncturing, exceeded the authority of the municipal Legislature in exercising the police power. The Court noted that commonly used and innocently possessed instruments of everyday life would be included within the prohibition of the statute. The Court distinguished former Penal Law § 1897 on the ground that "the Legislature limited the malum prohibitum crime to the possession of articles which, from their nature, are not likely to be found on innocent persons.” (Supra, at 59.) The Court ruled that to penalize mere possession of an object which is not inherently harmful bears no relation to protecting the public’s safety. (Supra, at 59-60.)
This was the judicial gloss on the predecessor statutes which were incorporated into the present Penal Law §§ 265.01 and 265.02. (See, People v Velasquez, supra, at 824-825.)
In Persce (supra), the Court of Appeals held that the crime of possessing a per se weapon was "malum prohibitum”, meaning that the only intent required to be proven is the intent to commit the prohibited act of possession. (People v *679 Persce, supra, at 402.)[7] In other words, the defendant’s culpability may be inferred from the act itself, based upon its inherent harmfulness. (See, People v Munoz, supra, at 59.) However, in order for this inference to be reasonable and fair, there must be a connection grounded in human experience between the inference of culpability and the act of possession. (Supra.) Where culpability is predicated upon possession of an object which has little use but as an instrument of crime, an awareness of possession of the object ordinarily supports the inference of culpability. However, where it appears that the possessor was completely without any awareness of the nature of the object, mere possession does not support the inference. It is therefore doubtful that the Legislature intended to make such unsciential possession culpable.
Moreover, as noted in Munoz (supra) the power to prohibit the act of possession depends upon the identity of the thing possessed as an inherently dangerous object not readily adapted to innocent use. However, possession of such an object without any awareness of its intrinsically dangerous character is not unlike possession of an innocuous object which may be adapted to an unlawful use, but without any intent to do so. It would appear questionable that the Legislature has power to punish the mere act of possession without proof that the possessor was aware of the identity of the thing possessed.
In addition to the history of the statute, general considerations militate against holding that the criminal possession of a weapon requires no mental culpability whatsoever. In order to comport with basic principles of due process of law, proof of some awareness of wrongdoing is ordinarily required before criminal sanctions may be imposed. (Morissette v United States, 342 US 246, 250 [1952].) The omission of any mental culpability requirement from a criminal statute which authorizes serious penalties does not justify an assumption that the Legislature intended to impose strict liability, since such a construction is "inconsistent with our philosophy of criminal law.” (Supra; see, United States v Anderson, 885 F2d 1248, 1253-1254 [5th Cir 1989].) Exceptions to this rule are limited to regulatory statutes. Where the defendant engages in commercial activities affecting the public health or safety (United States v Dotterweich, 320 US 277, 284 [over the counter drugs]) or deals with inherently dangerous objects (United *680 States v Balint, 258 US 250, 254 [1922] [narcotics]) the nature of the conduct should put the defendant on notice of a likelihood of governmental restriction.
Therefore, for example, a person who knowingly possesses dangerous weapons may be charged with determining the scope of regulation and complying therewith. (United States v Freed, 401 US 601, 609 [1971]; see, e.g., United States v Ross, 917 F2d 997, 1000-1001 [7th Cir 1990].) Even in cases where the government’s interest in the public safety justifies placing the burden of inquiry on the possessor, however, the basis for attributing culpability is the possessor’s knowledge of the relevant physical characteristics of the thing possessed which potentially subject it to regulation. (United States v Freed, supra, 401 US, at 607; see, United States v Anderson, supra, 885 F2d, at 1253, n 8.) To avoid injustice in such cases, courts universally hold that it must be evident from external appearances that the thing possessed is of a kind subject to regulation. (See, e.g., United States v Anderson, supra; United States v Collins, 949 F2d 1029, 1031 [8th Cir 1991] [the government was required to prove knowing possession of the explosives and that appellants knew that what they possessed were explosives].) Knowledge of this kind is what puts the possessor on notice of the need for further inquiry. (United States v Ross, supra, 917 F2d, at 1001.)
For these reasons, Federal courts consistently construe the Federal statute prohibiting the unregistered possession of certain kinds of firearms (26 USC § 5861) to require knowledge that the object possessed was a firearm, even though the statute as written has no element of mental culpability. (Sipes v United States, 321 F2d 174, 179 [8th Cir 1963] [Blackmun, J.]; United States v Freed, supra, 401 US, at 607; United States v Anderson, 885 F2d 1248, supra; United States v Harris, 959 F2d 246, 258-259 [DC Cir 1992]; United States v Williams, 872 F2d 773, 775 [6th Cir 1989].) Other States’ courts have made similar rulings. (Commonwealth v Sampson, 383 Mass 750, 422 NE2d 450, 457 [1981] [flare gun not within the ordinary meaning of firearm]; People v Tenorio, 197 Colo 137, 590 P2d 952, 957 [1979] [defendant must have understood that the object possessed was a weapon].) These courts require proof that the external appearance of the object put the defendant on notice of its character as a weapon probably subject to regulation. (United States v O’Mara, 963 F2d 1288, 1291 [9th Cir 1992]; see, United States v Herbert, 698 F2d 981, 986 [9th Cir 1983] [unregistered firearm internally modified in a way *681 that subjected it to registration]; United States v Kindred, 931 F2d 609 [9th Cir 1991] [antique, nonfunctional firearm].)
Finally, to dispense with proof that the defendant knew the identity of the object possessed and yet to impose felony sanctions for mere possession would be questionable under the Due Process Clause of the Fifth Amendment. (Holdridge v United States, 282 F2d 302, 310 [8th Cir 1960]; United States v Williams, supra, 872 F2d, at 776-777; Commonwealth v Jackson, 369 Mass 904, 344 NE2d 166 [1976].) Courts are guided by a strong presumption of constitutionality in construing legislative enactments, which requires that the statute be read as consistent with constitutional requisites whenever the legislative history permits such a construction. (Penal Law § 15.15 [2].) This includes reading into the statute that degree of mental culpability required to conform to the requirements of due process of law. (See, People v Finkelstein, 9 NY2d 342, 344-345 [1961] [reading a requirement of proof of knowledge into a statute prohibiting possession of obscene material for sale].)
Therefore, the court holds that Penal Law § 265.01 (1) and § 265.02 (1) necessarily require proof that the defendant was aware of possessing the alleged weapon (Penal Law § 15.00 [2]) and was aware of the physical characteristics of the object which distinguish it as a weapon within the meaning of the statute.
This holding is not inconsistent with cases rejecting proof of knowledge of specific characteristics of the weapon, as an element of these offenses. (See, e.g., People v Ansare, 96 AD2d 96 [4th Dept 1983], supra [knowledge of the operability of firearm is not required]; cf., e.g., United States v Harris, supra, 959 F2d, at 258-259.) The mental culpability required to be proven may differ as to different elements of an offense. (See, People v Mitchell, 77 NY2d 624 [1991]; United States v Freed, supra, 401 US, at 613 [Brennan, J., concurring].) Construing these statutes consistently with the minimum requisites of due process compels proof of some mental culpability before the serious sanctions called for by the statutes may be imposed. The requirements of due process are satisfied by evidence that the defendant was generally aware of the identity of the object possessed, together with proof that the object was in fact one of the weapons proscribed by the statute. (People v Munoz, supra; see, United States v Harris, supra [proof that the defendant knew the firearm was a machine gun not required]; State v Winders, 366 NW2d 193 [Iowa 1985] [proof that the defendant knew the barrel length of shotgun not *682 required].) Once the defendant is aware that the object is a weapon and therefore likely to be subject to governmental regulation, the inherently dangerous nature of the object is a sufficient basis to require the defendant to determine whether the particular characteristics of the weapon subject it to regulation. (United States v Freed, supra, 401 US, at 609; United States v Ross, supra, 917 F2d, at 1000-1001.)
Accordingly, the Assistant District Attorney should have instructed the Grand Jury that they were required to find that the defendant knew that the object he obtained from the car was an electronic stun gun, in order to return an indictment against the defendant for criminal possession of a weapon in the third degree. Failure to so charge rendered the proceeding defective to the prejudice of the defendant (CPL 210.35 [5]; 190.25 [6]), considering his testimony before the Grand Jury that he was unaware of the nature of the object he possessed. Therefore, that count of the indictment is dismissed with leave to re-present upon a proper legal instruction.

. Penal Law § 265.02 (1) reclassifies the crime of possessing one of the weapons listed in Penal Law § 265.01 (1) from a class A misdemeanor to a class D felony, where the accused previously was convicted of a crime.

. Moreover, it was the requirement of proof of knowing possession that gave rise to the need for a statutory presumption of possession by all persons present when a gun or other per se weapon is found in a car. (Penal Law § 265.15 [2], [3]; People v Sanchez, 110 AD2d 665 [2d Dept 1985].)

. Nor is the court aware of any decision holding an accused liable for possession of any other per se weapon where the accused credibly disclaims knowledge of the nature of the thing possessed.

. While these decisions appear equivalent in effect to a requirement of an intent to possess the weapon unlawfully, the statute has been interpreted as not to require such proof of intent. (People v Marrero, 69 NY2d 382 [1987].)

. Under the statute then in effect, the prohibited weapons were the slungshot, billy, sandclub or metal knuckles.

. The statute then in effect included the blackjack, slungshot, billy, sandclub, sandbag, metal knuckles, and bludgeon.

. This concept is now incorporated in Penal Law § 15.00 (2), discussed previously.